IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-1056

_____

**FILED**
**November 16, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA *ex rel.*
PATRICK MORRISEY,
ATTORNEY GENERAL,
Petitioner

v.

DIOCESE OF WHEELING-CHARLESTON, and
MICHAEL J. BRANSFIELD,
in his capacity as former Bishop of the
Diocese of Wheeling-Charleston,
Respondents

_____

Certified Questions from the Circuit Court of Wood County
The Honorable J.D. Beane, Judge
Civil Action No. 19-C-69

CERTIFIED QUESTION ANSWERED

_____

Submitted: September 22, 2020
Filed: November 16, 2020

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Douglas P. Buffington, II, Esq.
Senior Deputy Attorney General
Douglas L. Davis, Esq.
Abby G. Cunningham, Esq.

James C. Gardill, Esq.
Richard N. Beaver, Esq.
Edward M. George, III, Esq.
Phillips, Gardill, Kaiser
& Altmeyer, PLLC
Wheeling, West Virginia

Assistant Attorneys General
Charleston, West Virginia

Counsel for Petitioner

Christopher A. Brumley, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Charleston, West Virginia

Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WORKMAN dissents and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."  Syllabus Point 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va. Code,* 51–1A–1, *et seq.* and *W.Va. Code,* 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court."  Syllabus Point 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

4.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

5. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

6. "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syllabus Point 4, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

7. "A statute that is ambiguous must be construed before it can be applied." Syllabus Point 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

8. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, S.E.2d 120 (1984).

9. "'Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. Pt. 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938)."

ii

Syllabus Point 3, *Sheena H. ex rel. Russell H. ex rel. L.H. v. Amfire, LLC*, 235 W. Va. 132, 772 S.E.2d 317 (2015).

10. "It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925).

11. The deceptive practices provisions, W. Va. Code §§ 46A-6-101 to 106 (2015), in the West Virginia Consumer Credit and Protection Act do not apply to or regulate the educational or recreational services offered by a religious institution.

WALKER, Justice:

The Attorney General of West Virginia (the Attorney General) sued the Diocese of Wheeling-Charleston and Michael J. Bransfield in his capacity as Former Bishop of the Diocese of Wheeling-Charleston (the Diocese). The Attorney General alleged that the Diocese knowingly employed persons who admitted to sexually abusing others or who were credibly accused of sexual abuse at its schools and camps for decades. By hiding that danger or misrepresenting it, the Attorney General alleged that the Diocese violated the deceptive practices provisions of the West Virginia Consumer Credit and Protection Act. Upon the Diocese's motion, the circuit court dismissed the Attorney General's claims. But, the court stayed its order and certified the following question of law to this Court: "Do the deceptive practices provisions of the West Virginia Consumer Credit and Protection Act, West Virginia Code §§ 46A-6-101 to 106 (2015), apply to educational and recreational services offered by a religious institution?"[1] For the reasons discussed below, we answer "No."

## I. Facts and Procedural History

The Attorney General sued the Diocese in March 2019 for alleged violations of the deceptive practices provisions of the West Virginia Consumer Credit and Protection

---

[1] We have reformulated the circuit court's first certified question. Because our answer to that first question moots the second question certified below, we do not address it.

1

Act (CCPA), West Virginia Code §§ 46A-6-101 to 106 (2015).[2]  Generally, the Attorney General claimed that the Diocese had violated the deceptive practices provisions when it knowingly employed admitted and credibly-accused sexual abusers in its schools and camps but neither disclosed that material information to consumers nor warned them of the alleged dangers inherent to the educational and recreational services it provided.[3]  The Attorney General also claimed that the Diocese had made material misrepresentations regarding the safety of those services.  The Complaint asserted two causes of action under the deceptive practices provisions: Advertised Services Not Delivered[4] and Failure to Warn of Dangerous Services.[5]

The circuit court granted the Attorney General leave to file the Amended Complaint in June 2019, which included slight expansions on the factual allegations of the

---

[2] West Virginia Code § 46A-6-104 (1974), the animating section of the deceptive practices provisions, states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

[3] The Attorney General also alleged that the Diocese had failed to conduct appropriate background checks in violation of its own policies and contrary to its public representations.

[4] W. Va. Code §§ 46A-6-104 and 46A-6-102(7)(I), (L), and (M) (2015).

[5] *Id*. at §§ 46A-6-104 and 102(7)(L) and (M).

The Diocese moved to dismiss the Complaint arguing, inter alia, that the Legislature intended to regulate religious schools under Chapter 18 of the West Virginia Code, Education, and not the CCPA.  The court did not rule on the motion before the Attorney General filed the Amended Complaint.

original Complaint. In the Amended Complaint, the Attorney General asserted the same two causes of action found in the original Complaint. He added, however, a third claim: that the Diocese had obtained an unfair competitive advantage over other schools and camps when it had misrepresented and omitted material information about the safety of its own schools and camps.[6]

The Diocese moved to dismiss the Amended Complaint. Two issues predominated the parties' briefing on the motion and their September 2019 argument to the court: whether the educational and recreational services offered by the Diocese were subject to the deceptive practices provisions of the CCPA and, if they were, whether the Attorney General's attempt to enforce those provisions impinged on the Diocese's constitutional rights. The circuit court granted the Diocese's motion in November 2019, stayed the case, and certified two questions of law to this Court.[7]

---

[6] *See* W. Va. Code §§ 46A-6-104 and 102(7)(L) and (M).

[7] Under West Virginia Code § 58-5-2 (1998), "[a]ny question of law, including, but not limited to, questions arising . . . upon a challenge of the sufficiency of a pleading . . . may, in the discretion of the circuit court in which it arises, be certified by it to the Supreme Court of Appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back." We have held that "[a]n order sustaining a motion to dismiss which dismisses the complaint but does not dismiss the action is reviewable upon certificate authorized by W.Va.Code, 58—5—2, As amended." Syl. Pt. 1, *Neal v. Huntington Pub. Co.*, 159 W. Va. 556, 223 S.E.2d 792 (1976). Therefore, the questions are properly before us.

We note, too, that on the off chance that this Court would have treated the dismissal order as a final order, the Attorney General noticed an appeal of that order, docketed in

3

## II. Standard of Review

"The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."[8]  Likewise, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[9]  "With respect to the term *de novo*, we have observed it means anew; afresh; a second time.  We, therefore, give a new, complete and unqualified review" to the certified question before us.[10]

## III. Analysis

The questions certified by the circuit court, and its answers, are:

> 1.      Do the provisions of Article 6 of the Consumer Credit and Protection Act, respecting unfair methods of competition and unfair or deceptive acts or practices, apply to religious institutions in connection with their sale or advertisement of educational or recreational services?      Answer:  No.
>
> 2.      Does the cumulative impact of the entire relationship between Church and State arising from the Attorney General's application of the Act constitute an excessive entanglement of

---

case no. 19-1199.  On February 18, 2020, this Court granted the Attorney General's motion to hold the appeal in case no. 19-1199 in abeyance pending resolution of the questions certified by the circuit court.

[8] Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172, (1996).

[9] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

[10] *Vanderpool v. Hunt*, 241 W. Va. 254, 259, 823 S.E.2d 526, 531 (2019) (cleaned up).

Church and State prohibited by the constitutions of the United States and the State of West Virginia? Answer: Yes.

But, we are not bound to answer the exact question certified by the circuit court; this Court always retains the power to reformulate certified questions:

> When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va .Code*, 51-1A-1, *et seq.* and *W.Va. Code*, 58-5-2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.[11]

So, we reformulate the circuit court's first question as follows: Do the deceptive practices provisions of the West Virginia Consumer Credit and Protection Act, West Virginia Code §§ 46A-6-101 to -106 (2015), apply to educational and recreational services offered by a religious institution?[12]

We briefly review the precepts of statutory interpretation before turning to the statutes at issue in this case. As always, the Legislature's intent is both our guide and our goal in construing a statute; thus, our mantra: "[t]he primary object in construing a

---

[11] Syl. Pt. 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

[12] The analysis of the reformulated certified question moots the second question certified by the circuit court. Therefore, we decline to address it. *See Wilson v. Bernet*, 218 W. Va. 628, 637, 625 S.E.2d 706, 715 (2005) (declining to address certified question rendered moot by answer to preceding question).

5

statute is to ascertain and give effect to the intent of the Legislature."[13]  The way is clear when the Legislature has plainly expressed its intent in the language of a statute.  "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."[14]  In doing so, "the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use."[15]  Conversely, "[a] statute that is ambiguous must be construed before it can be applied."[16]  An ambiguous statute engenders "doubtfulness, doubleness of meaning or indistinctness or uncertainty of an expression . . . ."[17]

With these principles in mind, we first consider the deceptive practices provisions and then turn to West Virginia Code §§ 18-28-1 to 7.

---

[13] Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

[14] Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

[15] Syl. Pt. 4, *id.*

[16] Syl. Pt. 1, *Farley v. Buckalew,* 186 W. Va. 693, 414 S.E.2d 454 (1992).

[17] *Crockett v. Andrews*, 153 W. Va. 714, 718, 172 S.E.2d 384, 387 (1970).

*A.*      ***The Deceptive Practices Provisions of the CCPA***

The Attorney General pleaded causes of action arising under the deceptive practices provisions of the CCPA in his Amended Complaint. He alleged that education and recreation are "services," as that term is defined in the CCPA. Consequently, he reasoned, he may bring deceptive practices claims to regulate the educational and recreational services supplied by a religious institution.

West Virginia Code § 46A-6-104 states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."[18] "'Trade' or 'commerce'" is "the advertising, offering for sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state."[19] "'Services' include[] . . . 'privileges with respect to . . . education[ and] recreation.'"[20]

On appeal, the Attorney General posits that because "services" include "privileges with respect to . . . education[ and] recreation," then, services—for purposes of the CCPA, at least—include education and recreation. Our review of this issue is *de novo* and brief. We find that the common and ordinary meaning of "privileges" aligns with those

---

[18] W. Va. Code § 46A-6-104.

[19] *Id*. § 46A-6-102(6).

[20] *Id*. § 46A-1-102(47)(b) (1996).

7

dictionary definitions offered by the Attorney General: "a right or immunity granted as a peculiar benefit, advantage, or favor."[21] Numerous dictionary definitions track this meaning, including the first definition of the word in *Black's Law Dictionary*: "A special legal right, exemption, or immunity granted to a person or class of persons; an exception to a duty."[22] Considered in the context of the CCPA, we see that a "service" includes a peculiar[23] legal right with respect to education or recreation.[24]

---

[21] *See Merriam-Webster Dictionary*, "Privilege," available at https://www.merriam-webster.com/dictionary/privilege (last visited October 1, 2020).

[22] *See Black's Law Dictionary*, "Privilege" 1390 (3d Ed. 2014). *See also The Oxford Eng. Dictionary*, "Privilege" 522 (2d. Ed., Vol. II 1989) ("A right, advantage, or immunity granted to or enjoyed by a person, or a body or class of persons, beyond the common advantages of others; an exemption in a particular case from certain burdens or liabilities.").

[23] Notably, "peculiar," means "different from the usual or normal." *Merriam-Webster Dictionary*, "Peculiar," available at https://www.merriam-webster.com/dictionary/privilege (last visited October 1, 2020). So, the right described above, granted in the context of "trade" or "commerce," is different from the "fundamental, constitutional right" to education found in Article 12, § 1 of the West Virginia Constitution. *See* Syl. Pt. 3, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979) ("The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution, make education a fundamental, constitutional right in this State.").

[24] *See Mountain State College v. Holsinger*, 230 W. Va. 678, 684, 742 S.E.2d 94, 100 (2013) (describing private college as "seller of education services"). *Compare Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 475 (Minn. Ct. App. 1999) (holding that "classes or course instruction provided by a private, proprietary, for-profit educational institution constitute a 'service' or 'intangible' under the [Minnesota] consumer fraud act"); *Malone v. Acad. of Court Reporting*, 582 N.E.2d 54, 59 (Ohio Ct. App. 1990) (holding that student-plaintiff had valid claim under Ohio's consumer laws against a paralegal school that allegedly misrepresented its accreditation status and job placement success); *Scott v. Ass'n for Childbirth at Home, Int'l*, 480 N.E.2d 1012, 1015 (Ill. 1981) (holding that sale of

We disagree with the Diocese that the phrase "privileges with respect to" limits application of the deceptive practices provisions of Article 6 to the consumer credit context. Had the Legislature intended that limit, it would have said so by using terms already defined in Article 1, such as "credit,"[25] or "consumer credit sale."[26] Instead, the Legislature chose to use an undefined phrase, "privileges with respect to," communicating that (1) something other than credit or a consumer credit sale of education or recreation is a service, and (2) the common, every day meaning of "privilege" controls.

## B. West Virginia Code §§ 18-28-1 to 7

While it may be clear that "services," for purposes of the CCPA, include education or recreation, the next step—whether the deceptive practices provisions can regulate those services when a religious institution offers them—is not. That is because a conflict arises when the deceptive practices provisions are applied to a religious institution's educational and recreational services and West Virginia Code §§ 18-28-1 to 7 (2018). Before analyzing that conflict, we briefly recall that "where two statutes are in apparent conflict, the Court must, if reasonably possible, construe such statutes so as to

---

educational services by corporation is trade or commerce under the Illinois consumer fraud statute).

[25] W. Va. Code § 46A-1-102(17).

[26] *Id*. § 46A-1-102(13).

give effect to each."[27]  But, "when it is not reasonably possible to give effect to both statutes, the more specific statute will prevail."[28]

The Legislature enacted §§ 18-28-1 to 7—entitled, "Private, Parochial or Church Schools, or Schools of a Religious Order"—in 1983.  The Article imposes requirements on "private, parochial or church schools or schools of a religious order" (church schools),[29] such as observance of a 180-day instructional term, maintenance of attendance and immunization records, compliance with the West Virginia school bus safety regulations, administration of a nationally-normed standardized achievement test, and establishment of a school specific crisis response plan.[30]  If a church school meets those requirements, then the Legislature has directed that it "shall [not] be subject to any other provision of law relating to education except requirements of law respecting fire, safety, sanitation and immunization."[31]

---

[27] Syl. Pt. 4, in part, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958).

[28] *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 670, 815 S.E.2d 474, 481 (2018).

[29] We shorten the list of the types of schools to which Article 28 applies for the sake of clarity.

[30] W. Va. Code §§ 18-28-2 (2011) and 18-28-3(a) (2018).

[31] *Id*. § 18-28-6 (1983).  An amendment to § 18-28-6 was introduced in 2020 that would have removed the immunization obligation.  2020 W. Va. S.B. 565.

10

The Diocese contends that § 18-28-6 precludes application of the CCPA to the educational services delivered by its schools, and that the statute makes that "unequivocally clear." The Attorney General acknowledges that the statute "contain[s] preemptory language of [some] kind," but argues that the CCPA does not "relat[e] to education," as is necessary to trigger the preclusive effect of § 18-28-6. The Attorney General also argues that the public policy of § 18-28-6 does not support the exemption of church schools from the policing of consumer transactions under the CCPA.

Neither the Diocese nor the Attorney General uses sufficiently precise language. The issue is not whether § 18-28-6 exempts church schools from the entire CCPA. Rather, we consider whether § 18-28-6 bars the regulation of educational services offered by a church school under *the deceptive practices provisions* of the CCPA. This more-tailored approach shows that the Attorney General's argument—that when applied as he desires, the CCPA does not relate to education—is wrong.

"The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,' Black's Law Dictionary 1158 (5th ed. 1979)—and the words thus express a broad pre-emptive purpose."[32] Of course, the words "relating to" cannot connote

---

[32] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). *See also Phone Recovery Servs., LLC v. Qwest Corp.*, 919 N.W.2d 315, 320 (Minn. 2018) (adopting plain

11

unlimited connections; otherwise, the words would lose their meaning and the precept of statutory construction that "[e]ach word of a statute should be given some effect," would be violated.[33] That is why, as the Eleventh Circuit has explained in a slightly different context, the phrase must have some boundaries:

> Similarly, "related to" marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond. As the Supreme Court has explained in the ERISA pre-emption context, "related to" is limiting language and "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy," it would have no limiting purpose because "really, universally, relations stop nowhere." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) (quotation marks omitted).[34]

We fail to see how the deceptive practices provisions are not "provisions of law relating to education" when the Attorney General tries to apply them to educational services. The Attorney General argues that he attempts only to regulate the relationship between the church schools and the consumers who buy their educational services. That commercial relationship, he suggests, cannot be one "relating to education"; otherwise, he

language definition of "relating to" from *Morales* to discern claims "relating to taxation," and, so exempt from regulation under the Minnesota Fraudulent State Claims statute).

[33] Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

[34] *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218–19 (11th Cir. 2011).

argues, church schools are exempt from nearly *every* provision of law that could conceivably apply to them—something the Legislature could not have intended.

We are not persuaded. The Attorney General's argument misses this key point: while the deceptive practices provisions may regulate the commercial relationship between a church school and consumers, its enforcement depends on the assessment of the qualities of the education actually supplied by the church school. In other words, one cannot determine whether a church school has (1) misrepresented the qualities of its educational services, (2) omitted a material fact about them, or (3) engaged in other deceptive practices regarding their substance, without passing judgment upon the substantive educational services actually provided. Viewed in reverse, the deceptive practices provisions of the CCPA would necessarily regulate the substance of the education provided by the church school when they impose liability if the educational services delivered do not match those promised.

That conflict makes it impossible to give effect to both the deceptive practices provisions and §§ 18-28-1 to 7. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."[35] As §§ 18-28-1 to 7 specifically regulate church schools—to the exclusion of other provisions of law relating to

---

[35] Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984).

13

education[36]—those statutes must prevail over the deceptive practices provisions as the Attorney General attempts to apply them, here, to give effect to the Legislature's intent.

## C. Services of a Religious Institution

The clearly pronounced public policy behind West Virginia Code §§ 18-28-1 to 7 leads us to conclude that the Legislature also did not intend to empower the Attorney General to regulate a *religious institution's* educational and recreational services under the deceptive practices provisions of the CCPA. The Legislature stated this broad policy in § 18-28-1 (1983):

> In conformity with the constitutions of the United States and of West Virginia, it is the public policy of the State in matters of education that no human authority shall, in any case whatever, control or interfere with the rights of conscience or with religious liberty and that no person shall be enforced, restrained, molested or burdened, in body or goods, or otherwise suffer, on account of his or her religious opinions or belief, but all people shall be free to profess, and by argument, to maintain their opinions in matters of religion; and further be free to select their religious instructor, and to make for his or her support, such private contract as they shall please, and that religion, morality and knowledge being necessary to good government and the happiness of humankind, the means of education shall forever be encouraged.

As explained above, enforcement of the deceptive practices provisions depends on an assessment of the nature of the education actually supplied by the church

---

[36] We emphasize that a church school is not entitled to the exemption of § 18-28-6 if it is not in compliance with the requirements of Chapter 18, Article 28.

school. The Attorney General's position—that he is empowered to apply those provisions to the educational and recreational services offered by a *religious institution*, rather than just a school operated by the institution—necessarily undermines the public policy of § 18-28-1, the prohibition of § 18-28-6, and reason.

Consider a church-sponsored fee-based trip: could the Legislature have intended the Attorney General to regulate a religious institution's representations about the trip but not representations made by its affiliated church school? That is absurd. It would also be absurd to conclude that the Legislature intended to exempt a church school's representations about its educational services from regulation under the deceptive practices provisions of the CCPA, but not those same representations when made by the affiliated religious institution regarding its recreational services.

"This Court has recognized that the CCPA is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and must be liberally construed to accomplish that purpose."[37] To that end, the Legislature has directed that the deceptive practices provisions "shall be liberally construed so that its beneficial purposes may be served."[38] We are also cognizant that those provisions are "among the most broadly drawn provisions contained in the Consumer Credit and Protection Act and

---

[37] *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 151, 706 S.E.2d 63, 72 (2010).

[38] W. Va. Code § 46A-6-101 (2015).

15

[they are] also among the most ambiguous."[39]  So, without a clear statement from the Legislature as to how it intended the deceptive practices provisions to interact with §§ 18-28-1 to 7, we must determine the reach of the deceptive practices provisions by applying our tools—the rules of statutory construction—to the materials available.

We cannot ignore the public policy expressed by the Legislature in §§ 18-28-1 to 7 and its apparent conflict with application of the deceptive practices provisions to educational and recreational services offered by a religious institution.  Nor can we overlook the absurd results of resolving that conflict by construing those statutes to regulate a church school's representations about its educational and recreational services, but not a religious institution's.  "'Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938)."[40] As we stated in 1925:

> It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the

---

[39] *McFoy v. Amerigas, Inc.*, 170 W. Va. 526, 529, 295 S.E.2d 16, 19 (1982).

[40] Syl. Pt. 3, *Sheena H. ex rel. Russell H. ex rel. L.H. v. Amfire, LLC*, 235 W. Va. 132, 772 S.E.2d 317 (2015).

16

literal sense of the words in a statute, when such construction would lead to injustice and absurdity.[41]

So, we hold that the deceptive practices provisions, W. Va. Code §§ 46A-6-101 to 106 (2015), in the West Virginia Consumer Credit and Protection Act do not apply to or regulate the educational or recreational services offered by a religious institution.

The Attorney General's allegations against the Diocese are deeply troubling. Diocesan leaders allegedly exposed children and adults to admitted sexual abusers—or to those credibly accused of sexual abuse—for decades. And, when offered the opportunity to separate those abusers from students and church faithful, the Diocese allegedly failed to take it. Children trust adults not to hurt them. The faithful trust their leaders to embody the tenets of the faith. If the Diocese acted, or failed to act, as the Attorney General alleges, then the Diocese has violated that trust and harmed those tendered to its care. While we recognize that violations of this trust may subject the Diocese to liability under other legal theories, our sympathy cannot rewrite the law and we cannot ignore the existence and import of §§ 18-28-1 to 7 and its conflict with the deceptive practices provisions when applied to the educational and recreational services of a religious institution.[42]

---

[41] Syl. Pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

[42] Nothing in our decision today relieves a religious institution, or a school or camp operated by a religious institution, from its obligation to maintain a safe environment or its obligation to comply with other provisions of law as the case may be. For example, our mandated reporter statute, West Virginia Code § 49-2-803 (2018), requires school teachers, youth camp administrators and counselors, and members of the clergy, *inter alia*, to timely

17

We emphasize that the circuit court asked for an answer to a narrow legal question, and that is what we have supplied. As we have cautioned before when answering a different certified question regarding the reach of the deceptive practices provisions of the CCPA,

> this opinion should not be read as an attempt to in any way diminish the power of the office of the Attorney General. This Court recognizes and respects the powers granted the Attorney General by the Constitution and by statute, including the authority to enforce the provisions of the consumer protection act. Rather, it must be understood that the legal issue before us is a narrow one and that our resolution of this issue rests, as explained above, solely on this Court's understanding of the Legislature's intent in drafting W.Va. Code § 46A–6–104.[43]

## IV. Conclusion

For the reasons discussed above, we answer the reformulated certified question as follows:

> Do the deceptive practices provisions of the West Virginia Consumer Credit and Protection Act, West Virginia Code §§ 46A-6-101 to -106 (2015), apply to educational and

---

report reasonable suspicions of child abuse neglect or abuse—including sexual abuse or sexual assault—to the West Virginia Department of Health and Human Resources or law enforcement, depending on the severity of the suspected abuse. *Id*. § 49-2-803(a). A mandated reporter who fails in his duty, or prevents another from doing so, is guilty of a misdemeanor and subject to a $5,000 fine or up to a 90-day term of confinement. *Id*. § 49-2-812(a). If he fails to report a case involving the sexual abuse of a child on *school premises*, he is likewise guilty of a misdemeanor, and subject to $10,000 fine or up to six months of confinement. *Id*. § 49-2-812(b).

43 *State ex rel. McGraw v. Bear, Stearns & Co.*, 217 W. Va. 573, 579, 618 S.E.2d 582, 588 (2005).

recreational services offered by a religious institution?
Answer: No.

Certified Question Answered.