**FILED**
**June 16, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-1023

_____

STATE OF WEST VIRGINIA EX REL.
SCOTT PHALEN,
Petitioner

v.

CRAIG ROBERTS, Superintendent,
South Central Regional Jail,
Respondent

_____

Petition for a Writ of Habeas Corpus
Original Jurisdiction
CORRECTED WRIT GRANTED

_____

Submitted: April 30, 2021
Filed: June 16, 2021

John Sullivan, Esq.
Ronni Sheets, Esq.
Kanawha County Public
Defender Office
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
West Virginia Attorney General
Briana J. Marino, Esq.
Andrea Nease Proper, Esq.
Assistant Attorneys General
Counsel for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.
CHIEF JUSTICE JENKINS dissents and reserves the right to file a dissenting opinion.
JUSTICE ARMSTEAD dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1.      "'*Habeas Corpus* is a suit wherein probable cause therefor being shown, a writ is issued which challenges the right of one to hold another in custody or restraint.' Syl. pt. 4, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)." Syl. Pt. 1, *State ex rel. Crupe v. Yardley*, 213 W. Va. 335, 582 S.E.2d 782 (2003).

2.      "'The constitutionality of a statute is a question of law which this Court reviews *de novo*.' Syl. Pt. 1, *State v. Rutherford*, 223 W. Va. 1, 672 S.E.2d 137 (2008)." Syl. Pt. 2, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011).

3.      "'Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein.' Syllabus Point 1, *Dunlap v. State Compensation Director*, 149 W. Va. 266, 140 S.E.2d 448 (1965)." Syl. Pt. 7, *State v. Mills*, 243 W. Va. 328, 844 S.E.2d 99 (2020).

4.      "'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syllabus Point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970)."

5.      "It is not for this Court arbitrarily to read into a statute that which it does not say.  Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray C.*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

i

6. West Virginia Code § 62-12-13(b)(1)(A) does not exclude from parole eligibility inmates who are incarcerated for violating the conditions of their supervised release pursuant to West Virginia Code § 62-12-26.

7. "Under Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W. Va. 292, 262 S.E.3d 885 (1980).

8. In order to avoid the constitutional prohibition against ex post facto laws, West Virginia Code § 15A-4-17(a) [2021] shall not be applied to those inmates who committed the underlying crimes for which they are incarcerated pursuant to West Virginia Code § 62-12-26 prior to April 30, 2021, the effective date of the statute, regardless of any contrary language contained therein.

**HUTCHISON, Justice**:

West Virginia law provides that any inmate may be paroled after serving one-fourth of a definite term sentence. W. Va. Code § 62-12-13(b)(1)(A) [2021]. After serving one-fourth of his ten-year definite term sentence for violating conditions of his supervised release, Petitioner Scott Phalen was released on parole. However, he was arrested and reincarcerated six months later because the Division of Corrections and Rehabilitation ("DOCR") determined that he had been released in error based upon an internal policy that inmates who are incarcerated for violating the conditions of their supervised release are neither eligible for parole pursuant to West Virginia Code § 62-12-13 nor entitled to receive commutation from their sentences for good conduct (also referred to as "good time") pursuant to West Virginia Code § 15A-4-17. Petitioner seeks an original jurisdiction writ of habeas corpus to direct Respondent Craig Roberts, Superintendent, South Central Regional Jail, to restore him to parole. *See* W. Va. Const. Art. VIII, § 3; W. Va. Code § 53-4-1 [1923].

Upon careful consideration of the parties' briefs and oral arguments, the appendix record, and the pertinent legal authority, including 2021 legislation enacted following the filing of the instant petition that purports to preclude petitioner from being granted good time after a certain date, and for the reasons set forth below, we grant petitioner's request for habeas relief as moulded.

1

## I. Factual and Procedural Background

The relevant facts of this case are gleaned from representations made in the parties' briefs and the scant appendix record. In 2011, petitioner was indicted by a Kanawha County Grand Jury on the offenses of first-degree sexual assault, first-degree sexual abuse, sexual abuse by a parent, and incest. The indictment alleged that petitioner's crimes occurred "on or about December 20, 2010." He pled guilty to one count of first-degree sexual abuse, and, on February 14, 2012, he was sentenced to one to five years in prison, pursuant to West Virginia Code § 61-8B-7 [2006] (the first-degree sexual abuse statute) followed by fifteen years of extended supervised release, pursuant to West Virginia Code § 62-12-26(a).[1] *See* Syl. Pt. 11, in part, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011) ("The imposition of the legislatively mandated additional punishment of a period

---

[1] West Virginia Code § 62-12-26 has been amended since petitioner committed the underlying offense but neither party contends that any amendments to the statute would materially impact or are otherwise relevant to petitioner's request for habeas relief. For ease of reference, therefore, we cite to the statute that is now in effect. West Virginia Code § 62-12-26(a) [2020] provides, in pertinent part, as follows:

> (a) Notwithstanding any other provision of this code to the contrary, any defendant convicted [of] . . . a felony violation of the provisions of § 61–8B–1 *et seq.*, . . . of this code shall, as part of the sentence imposed at final disposition, be required to serve, in addition to any other penalty or condition imposed by the court, a period of supervised release of up to 50 years: *Provided*, That the period of supervised release imposed by the court pursuant to this section . . . shall be no less than 10 years: . . . *And Provided further*, That pursuant to the provisions of § 62-12-26(h) of this code, a court may modify, terminate, or revoke any term of supervised release imposed pursuant to § 62-12-26(h) of this code.

of supervised release [is] an inherent part of the sentencing scheme for certain offenses enumerated in West Virginia Code § 62-12-26."). Petitioner discharged his prison sentence on December 2, 2013, and then commenced the period of supervised release. *See* W. Va. Code § 62-12-26(d) ("The period of supervised release imposed by the provisions of this section shall begin upon the expiration of any period of probation, the expiration of any sentence of incarceration or the expiration of any period of parole supervision imposed or required of the person so convicted, whichever expires later.").

West Virginia Code § 62-12-26(h)(3) provides that if a circuit court "finds by clear and convincing evidence that the defendant violated a condition of supervised release," then the circuit court may revoke the defendant's release and "require the defendant to serve in prison all or part of the term of supervised release." The circuit court found that petitioner violated the conditions of his supervised release[2] and, on June 9, 2017, ordered that petitioner "be sentenced to confinement . . . for a determinate term of ten (10) years" for the violation.

West Virginia Code § 62-12-13(b)(1)(A) [2021] provides that "[a]ny inmate of a state correctional institution is eligible for parole if he or she . . . has served one fourth

---

[2] West Virginia Code § 62-12-26(b) sets forth certain prohibited conduct for "[a]ny person required to be on supervised release[.]" Further, West Virginia Code § 62-12-26(f) provides that "[a] defendant sentenced to a period of supervised release shall be subject to any or all of the conditions applicable to a person placed upon probation pursuant to the provisions of § 62-12-9 . . . ." The parties do not explain, nor does the appendix record reveal, in what way petitioner violated the conditions of his supervised release.

3

of his or her definite term sentence[.]" After serving one fourth of his definite ten-year term, petitioner appeared before the Parole Board, which determined that petitioner should be released on parole.[3] Petitioner was released on parole on June 29, 2020.

In November of 2020, five months after petitioner's release on parole, the DOCR created new internal policy directives establishing that, among others, "sex offenders and child/abuse neglect offenders" are neither eligible for parole nor shall receive day-for-day good time[4] for incarceration imposed for revocation of supervised release.[5] On December 7, 2020, the DOCR issued a warrant for petitioner's arrest because, pursuant to this new DOCR policy, petitioner had been released from custody on June 29, 2020, due to a "clerical error" or "mistake." *See* W. Va. Code § 62-8-8(a) [2007] (authorizing the

---

[3] Like the supervised release statute (West Virginia Code § 62-12-26), the parole eligibility statute, West Virginia Code § 62-12-13, has been amended numerous times since petitioner committed the underlying offense of first-degree sexual abuse. Since the commission of petitioner's offense, the statute has consistently provided that an inmate is eligible for parole after serving "one fourth of his or her definite term sentence[.]" The parties do not contend that any of the amendments made to the statute since petitioner's crimes were committed are relevant to petitioner's request for habeas relief. Therefore, for ease of reference, we cite to the current version of the statute in this opinion.

[4] *See* W. Va. Code § 15A-4-17(c) (providing that inmates "shall be granted one day [of] good time for each day he or she is incarcerated").

[5] We note that while the DOCR policy precluding good time for incarceration imposed pursuant to revocation of supervised release was a written policy ("Policy Directive 151.06"), the similar policy concerning parole eligibility was not reduced to writing. Further, very little explanation is given for the enactment of these policy directives except for respondent's general statement that, upon the establishment of the DOCR in July of 2018, *see generally* West Virginia Code §§ 15A-3-1 through -18, the DOCR Commissioner conducted a widescale review of good time and parole eligibility among the prison population. The underlying reason for the review, however, is unclear.

issuance of "an order of arrest for inmates who have been released from the custody of the [now DOCR] due to[,] [inter alia,] a clerical error[] [or] mistake").[6]

On December 23, 2020, petitioner filed a petition for a writ of habeas corpus with this Court seeking reinstatement to parole. Following the filing of respondent's summary response to the petition, we issued a rule to show cause and scheduled oral argument for April 14, 2021.

While this case was pending, during the 2021 Legislative session, Senate Bill 713 ("S.B. 713") was introduced to amend the good time statute, West Virginia Code § 15A-4-17, in relevant part, to exclude inmates committed, pursuant to West Virginia Code § 62-12-26, for violating the conditions of their supervised release from being granted good time except that "an inmate who had good time calculated into his or her release prior to

_____

[6] The December 7, 2020, arrest warrant did not identify the "clerical error" or "mistake" that precipitated petitioner's release from custody in June of 2020. And, before this Court, respondent has given conflicting reasons for the issuance of the warrant. In his initial summary response to petitioner's petition for a writ of habeas corpus, respondent states that the "clerical error" or "mistake" upon which the arrest warrant was issued was that petitioner was not eligible for parole pursuant to the recently issued DOCR policy. However, in his later-filed supplemental response to petitioner's petition, respondent states, without acknowledging the earlier justification given, that petitioner was released on parole in error based upon the DOCR policy relative to good time. *See* Discussion *infra.*

October 21, 2020," is entitled to the good time awarded or earned. *See* W. Va. Code § 15A-4-17(a) [2021].[7]

Senate Bill 713 was passed by the Legislature on April 7, 2021, and approved by the Governor twelve days later. The Legislature made S.B. 713 effective on April 30, 2021. In light of this new legislation, which respondent states is simply a codification of the DOCR's "stance" in Policy Directive 151.06,[8] this Court directed the parties to file supplemental briefs addressing the impact of S.B. 713 on the issues raised in petitioner's habeas petition.

Oral argument was conducted on April 14, 2021, and the ordered supplemental briefing was filed thereafter. As discussed in more detail below, respondent avers that pursuant to S.B. 713, petitioner falls squarely within the category of inmates

---

[7] The statute governing good time was formerly codified at West Virginia Code § 28-5-27. The relevant good time provision in effect at the time petitioner's crime was committed was West Virginia Code § 28-5-27(a) [1984]. It provided:

> All adult inmates now in the custody of the commissioner of corrections, or hereafter committed to the custody of the commissioner of corrections, except those committed pursuant to article four, chapter twenty-five of this code, shall be granted commutation from their sentences for good conduct in accordance with this section.

*Id.* We observe that the parties do not reference this version of the statute in their briefs, but, instead, cite to the 2018 version of the good time statute, West Virginia Code § 15A-4-17. Regardless, we note that neither West Virginia Code § 28-5-27(a) [1984] nor West Virginia Code § 15A-4-17(a) [2018] excluded from its application inmates incarcerated for violating the conditions of their supervised release. *See* Discussion *infra.*

[8] *See* n. 5, *supra.*

excluded from receiving good time because he is incarcerated for violating the conditions of his supervised release pursuant to West Virginia Code § 62-12-26. Thus, applying S.B. 713 to petitioner's term of incarceration, and giving him credit for good time received prior to October 21, 2020, as the statute provides, respondent states that S.B. 713 changes petitioner's minimum discharge date from May 1, 2027, to November 10, 2023. For his part, petitioner argues that the retroactive application of S.B. 713 to his sentence precluding him from being granted good time after October 20, 2020, violates constitutional ex post facto principles and, insofar as it applies to inmates whose underlying offenses were committed prior to the effective date of the statute, it is unconstitutional.

## II.     Standard for Issuance of a Writ of Habeas Corpus

This case is before us on petitioner's original petition for a writ of habeas corpus. Pursuant to West Virginia Code § 53-4A-7(c) of the Post-Conviction Habeas Corpus statute, "we are given broad powers in fashioning the form of relief accorded in a habeas corpus proceeding." *State ex rel. McMannis v. Mohn*, 163 W. Va. 129, 141, 254 S.E.2d 805, 811 (1979).

Furthermore, we have explained that, generally, "'*Habeas Corpus* is a suit wherein probable cause therefor being shown, a writ is issued which challenges the right of one to hold another in custody or restraint.' Syl. pt. 4, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)." Syl. Pt. 1, *State ex rel. Crupe v. Yardley*, 213 W. Va. 335, 582 S.E.2d 782 (2003). *Accord Tasker v. Griffith,* 160 W.Va. 739, 742, 238 S.E.2d 229, 231 (1977)

7

("Habeas corpus lies to test the legality of the restraint under which a person is detained."); Syl. pt. 1, *State ex rel. Tune v. Thompson,* 151 W.Va. 282, 151 S.E.2d 732 (1966) ("The sole issue presented in a habeas corpus proceeding by a prisoner is whether he is restrained of his liberty by due process of law.").

In determining whether a writ shall issue, we are also asked to determine whether a certain provision of S.B. 713 violates the constitutional prohibition against *ex post facto* laws. "'The constitutionality of a statute is a question of law which this Court reviews *de novo*.' Syl. Pt. 1, *State v. Rutherford*, 223 W. Va. 1, 672 S.E.2d 137 (2008)." Syl. Pt. 2, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011). With these standards and considerations in mind, we proceed to examine the petition before us.

### III.    Discussion

Our determination of whether petitioner should be granted habeas relief rests on the resolution of two questions: first, whether petitioner, as an inmate incarcerated for violating the conditions of his supervised release, was eligible for parole when he was released on June 29, 2020; and second, whether S.B. 713 may be applied to petitioner to exclude him from being awarded or earning good time after October 20, 2020.[9]

---

[9] This Court previously upheld West Virginia Code § 62-12-26 as constitutional upon several challenges including cruel and unusual punishment, procedural due process, and double jeopardy grounds. *See State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

While each question requires its own analysis, we observe, as a threshold matter, that respondent relies on the same underlying argument with respect to both – that, pursuant to this Court's decision in *State v. Hargus*, the term of incarceration that petitioner is currently serving is not a "sentence" but, rather, is a "sanction" that was imposed upon him by the sentencing court for violating the conditions of his supervised release. As such, respondent argues, petitioner does not fall within the purview of either the parole eligibility or good time statute because each requires that the inmate be serving a "sentence" in order for the statute to apply. According to respondent, the DOCR policy directives that were issued following petitioner's release on parole and that precipitated his arrest and reincarceration followed from *Hargus*[10] – specifically, he argues that, "[f]or a period of incarceration to be a 'sentence,' a new case, with a new crime, new indictment, new plea or trial by jury, and new final disposition would have to occur." In contrast, respondent argues, "a 'sanction' is an enforcement penalty for the violation of the terms and conditions of the sentence already imposed for a previously adjudicated crime." Respondent contends that petitioner's current term of incarceration falls into the latter category[11] and, thus, he is

---

[10] Although respondent contends that "many" of this Court's opinions have "acknowledged the distinctions between a 'sanction' and a 'sentence[,]'" he fails to cite to any case other than *Hargus* for this proposition.

[11] Respondent also attributes the DOCR's policy directives to the supervised release statute itself. In a strained and very convoluted argument, respondent appears to contend that because West Virginia Code § 62-12-26 gives the sentencing court wide discretion in deciding whether to modify or revoke a term of supervised release and order the offender to be incarcerated, the statute "provides for sanctions." *See* W. Va. Code §§ 62-12-26(h)(2) through (4) (providing that "[t]he court *may*" under certain conditions, "[e]xtend a period of supervised release if less than the maximum authorized period was previously imposed

Continued . . .

9

excluded both from being eligible for parole and from being granted commutation from his "sanction" for good conduct by the plain and unambiguous language of the relevant statutes, which only apply to an inmate who is serving a "sentence." We disagree.

At issue in *Hargus* was "the constitutionality of the portion of W. Va. Code § 62-12-26 that permits the revocation of supervised release and additional incarceration when a sex offender violates a condition of supervised release." *Id.* at 739, 753 S.E.2d at 897. The *Hargus* defendants argued that West Virginia Code § 62-12-26(g)(3) (now § 62-12-(h)(3)) violated their right to procedural due process because, under the statute, a defendant's supervised release can be revoked and he or she can be ordered to serve an additional term of incarceration if a court finds a violation by clear and convincing evidence. The defendants argued that a jury should be required to find guilt of a violation beyond a reasonable doubt, "which is required for a finding of guilt in a criminal trial." *Id.* at 741, 753 S.E.2d at 899.

In determining that the challenged statutory provision did not violate the defendants' constitutional right to due process, we looked to *Johnson v. United States*, 529 U.S. 694 (2000), which addressed a similar federal statute, and observed that the United States Supreme Court "attributed post-revocation penalties to the defendant's original

---

or modify, reduce, or enlarge the conditions of supervised release"; "[r]evoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release"; or "[o]rder the defendant to remain at his or her place of residence during nonworking hours").

conviction and not to a violation of the conditions of supervised release." *Hargus*, 232 W.

Va. at 741, 753 S.E.2d at 899. Quoting *Johnson*, we explained that although violations of

the conditions of supervised release

> "often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties."

*Hargus*, 232 W. Va. at 741, 753 S.E.2d at 899 (quoting *Johnson*, 529 U.S. at 700). We thus

"construe[d] a revocation proceeding under W. Va. Code § 62-12-26(g)(3) to be a

continuation of the prosecution of the original offense and not a new prosecution of

additional offenses." *Id.* at 742, 753 S.E.2d at 900.[12]

Also in *Hargus*, we rejected the defendants' argument that the extended

supervision statute violates double jeopardy principles, reiterating that "a post-revocation

sanction simply is a continuation of the legal consequences of a defendant's original crime.

In other words, *it is part of a single sentencing scheme* arising from the defendant's original

---

[12] Based upon the reasoning in *Johnson*, we determined that a revocation hearing "does not require a finding of guilt by a jury beyond a reasonable doubt" and "the fact that a defendant's supervised release may be revoked and additional incarceration imposed based upon the circuit court's finding by clear and convincing evidence that a defendant violated the terms of his supervised release does not violate due process principles." *Hargus*, 232 W. Va at 742, 753 S.E.2d at 900.

conviction. *It is not an additional penalty* resulting from the defendant's initial conviction." *Id.* at 743, 753 S.E.2d at 901 (emphasis added).[13] *See United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018) ("'[T]he term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence.'" (internal citations omitted)).

We find respondent's interpretation of *Hargus* to be sorely misguided. It is abundantly clear that *Hargus* made no distinction between a "sentence" and a "sanction" but, instead, used those terms interchangeably and without bestowing any special significance upon either of them with respect to post-revocation incarceration, parole eligibility, good time, or otherwise. As further support that respondent completely misapprehends our holdings in that case, he fails to recognize that *Hargus* proceeded to examine the defendants' individual "post-revocation *sentences*" to determine whether they violated the disproportionality principle that is implicit in the cruel and unusual punishment clause of the state and federal constitutions. *See id.* at 743, 745, 753 S.E.2d at 901, 903 (noting that "Mr. Hargus violated a condition of his supervised release [, and] . . . . [a]s a result, [he] was *sentenced* to a post-revocation period of incarceration of five years" and,

---

[13] Thus, in syllabus point seven of *Hargus*, we held that West Virginia Code § 62-12-26(g)(3), "which provides for additional sanctions including incarceration, upon revocation of a criminal defendant's period of supervised release," does not violate the prohibition against double jeopardy. *Id.* at 743, 753 S.E.2d at 901.

similarly, that after Mr. Lester knowingly violated a condition of his supervised release, it was revoked, "and he was *sentenced* to two years of incarceration" (emphasis added)).[14]

Clearly, respondent's attempt to characterize post-revocation incarceration as anything other than a "sentence" is not supported by our decision in *Hargus* or elsewhere in the law and cannot stand. As a result, to the extent that the DOCR policy directives are premised upon this faulty interpretation of *Hargus* as justification for petitioner's arrest and reincarceration, they are unenforceable.

We now proceed to consider whether petitioner, as an inmate who is serving a sentence for violating the conditions of his supervised release pursuant to West Virginia Code § 62-12-26, was eligible for parole when he was released on June 29, 2020, and, further, whether S.B. 713 may be applied to him so as to exclude him from being granted good time after October 20, 2020. We will consider each in turn.

---

[14] Furthermore, since *Hargus*, we have applied various aspects of that decision to other cases and, in so doing, have consistently considered the offenders' post-revocation incarcerations as "sentences." *See State v. David T.*, No. 19-0778, 2020 WL 6482740 (W. Va., Nov. 4, 2020) (memorandum decision); *State v. Payne*, No. 17-0195, 2018 WL 1444287 (W. Va., March 23, 2018) (memorandum decision); *State v. Winning*, No. 17-0921, 2018 WL 4944416 (W. Va., Oct. 12, 2018) (memorandum decision); *State v. Parker-Boling*, No. 16-1193, 2017 WL 5629689 (W.Va., Nov. 22, 2017) (memorandum decision); *State v. Roger G.*, No. 14-1200, 2015 WL 5125486 (W. Va., Aug. 31, 2015) (memorandum decision).

***Parole Eligibility***

An inmate's eligibility for parole is governed by West Virginia Code § 62-12-13. The parties focus specifically on whether petitioner meets the requirements of West Virginia Code § 62-12-13(b)(1)(A), which states:

> *(b) Any inmate* of a state correctional institution *is eligible for parole* if he or she:
>
> (1)(A) Has served the minimum term of his or her indeterminate sentence or *has served one fourth of his or her definite term sentence*, as the case may be[.]

(Emphasis added).[15]

Petitioner argues that he satisfied the statute's objective criteria for parole eligibility in that he is "[a]ny inmate" who "has served one fourth of his definite term sentence," and that, following a hearing before the Parole Board, he was properly granted parole in June 2020. He contends that West Virginia Code § 62-12-13(b)(1)(A) is clear and unambiguous in that it encompasses "any" inmate and does not except from its application inmates who are incarcerated for violating the conditions of their extended supervised release.[16] We agree.

---

[15] West Virginia Code § 62-12-13 includes additional requirements for parole eligibility that are not alleged to be at issue in petitioner's case.

[16] In that respondent's entire argument hinges on "whether [p]etitioner's current term of incarceration is defined as a 'sentence' or a 'sanction,'" he effectively concedes that, if petitioner is determined to be serving a "sentence," he is eligible for parole under West Virginia Code § 62-12-13(b)(1)(A).

Initially, we observe that the "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). However, "'[w]here the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein.' Syllabus Point 1, *Dunlap v. State Compensation Director*, 149 W. Va. 266, 140 S.E.2d 448 (1965)." Syl. Pt. 7, *State v. Mills*, 243 W. Va. 328, 844 S.E.2d 99 (2020). We find West Virginia Code § 62-12-13(b)(1)(A) to be free from ambiguity. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

In plain language, West Virginia Code § 62-12-13(b)(1)(A) provides that "any inmate . . . is eligible for parole if he or she . . . has served one-fourth of his or her definite term sentence." This provision does not exclude inmates who are serving sentences for violating the conditions of their supervised release pursuant to West Virginia Code § 62-12-26. We have often said that "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray C.*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

15

Accordingly, we hold that West Virginia Code § 62-12-13(b)(1)(A) does not exclude from parole eligibility inmates who are incarcerated for violating the conditions of their supervised release pursuant to West Virginia Code § 62-12-26. Therefore, petitioner was eligible for parole pursuant to West Virginia Code § 62-12-13(b)(1)(A) when, after serving one fourth of his definite ten year sentence, he was released on parole on June 29, 2020.[17] To the extent the subsequently issued warrant for his arrest was based upon a determination that petitioner was ineligible for parole, the warrant was issued in error. *See* n. 6.

### *Senate Bill 713 and Good Time*

We now address whether S.B. 713, which became effective on April 30, 2021, may be applied to exclude petitioner from being granted good time. S.B. 713 amended West Virginia Code § 15-4-17, which now provides:

> (a) *All* adult *inmates* placed in the custody of the Commissioner of the Division of Corrections and Rehabilitation pursuant to a term of court-ordered incarceration for a misdemeanor or felony, *except those committed pursuant to § 25-4-1 et seq.* and *§ 62-12-26* of this code, shall be granted commutation from their sentences for good conduct in accordance with this section: *Provided,* That nothing in this section shall be considered to recalculate the "good time" of inmates currently serving a sentence or of giving back good time to inmates who have previously lost good time earned for a disciplinary violation: *Provided, however*, *That as of the effective date of the amendments to this section enacted during the regular*

---

[17] As previously noted, whether petitioner satisfied the other statutory requirements for parole is not at issue in this habeas petition.

16

*session of the Legislature, 2021, an inmate who had good time calculated into his or her release date prior to October 21, 2020, is entitled to the benefit of the good time awarded or earned before that date*, unless the good time was lost due to a disciplinary violation.

(Emphasis added).

Petitioner argues that, even if he is reinstated to parole, S.B. 713, if applied to him, would operate to increase his sentence by extending his maximum discharge date. *See* W. Va. Code § 62-12-18 ("The period of parole shall be the maximum of any sentence, less deductions for good conduct and work as provided by law, for which the paroled inmate, at the time of release, was subject to imprisonment under his or her definite or indeterminate sentence, as the case may be."); *see also* W. Va. Code § 15A-4-17(b) ("The commutation of sentence, known as 'good time,' shall be deducted from the maximum term of indeterminate sentences or from the fixed term of determinate sentences."). Petitioner argues that, while it is within the Legislature's authority to exclude inmates incarcerated pursuant to West Virginia Code § 62-12-26 from statutory sentencing provisions, constitutional ex post facto principles prohibit the statute's application to inmates whose offenses were committed prior to the effective date of the statute. We agree.[18]

---

[18] With regard to whether S.B. 713 applies to petitioner, respondent reiterates that petitioner is serving a "sanction" for violating the conditions of his supervised release rather than a "sentence" and that S.B. 713 "specifically removes those serving sanctions pursuant to violations of § 62-12-26 from the application of" the good time statute. Having already rejected respondent's claim that petitioner is not serving a sentence, we need not

Continued . . .

This Court has recognized that the commutation from a prison sentence for good conduct is a substantial statutory right that is subject to legal protection.[19] *See* Syl. Pt. 5, *State ex rel. Williams v. Dep't of Mil. Affs. & Pub. Safety, Div. of Corr.*, 212 W. Va. 407, 573 S.E.2d 1 (2002) ("'Good time credit is a valuable liberty interest protected by the due process clause, W. Va. Const. art. III § 10.'" (quoting Syl. Pt. 2, *State ex rel. Gillespie v. Kendrick,* 164 W. Va. 599, 265 S.E.2d 537 (1980)). Accordingly, legal provisions affecting good time are scrutinized under the Ex Post Facto Clause.[20] *See Lynce v. Mathis*, 519 U.S. 433 (1997); *Weaver v. Graham*, 450 U.S. 24 (1981); *see also Adkins v. Bordenkircher*, 164 W. Va. 292, 262 S.E.2d 885 (1980); *Hasan v. Holland*, 176 W. Va. 179, 342 S.E.2d 144 (1986).

It is well understood that "[u]nder Ex post facto principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W. Va. 292,

---

revisit the argument here. And, because respondent relies exclusively on this argument, he does not address whether S.B. 713 violates constitutional ex post facto principles.

[19] "'Commutation of time for good conduct is a right created by the Legislature.' Syllabus point 8, in part, *Woodring v. Whyte,* 161 W.Va. 262, 242 S.E.2d 238 (1978)." Syl. Pt. 5, *State ex rel. Williams v. Dep't of Mil. Affs. & Pub. Safety, Div. of Corr.*, 212 W. Va. 407, 573 S.E.2d 1 (2002).

[20] *Ex post facto* prohibitions arise out of Article I, Section 10, clause 1 of the United States Constitution, "No State shall . . . pass any Bill of Attainder, ex post facto law, or law impairing the Obligation of Contracts," and West Virginia Constitution, Article III, section 4, "No bill of attainder, ex post facto law, or law impairing the obligation of a contract shall be passed."

18

262 S.E.3d 885 (1980). Thus, "for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29 (footnote omitted); *see also Lynce*, 519 U.S. at 441; *Collins v. Youngblood*, 497 U.S. 37, 47 (1990). As the United States Supreme Court explained more fully in *Weaver*,

> the *ex post facto* prohibition[] . . . forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Id.* at 30-31. With respect to a statutory provision concerning the earning or awarding of good time, "'[t]he critical issue . . . [is] . . . whether the standards by which defendant's date of release is to be determined have been altered to his detriment. In other words, . . . whether an inmate could earn more good time under the prior good time statute than he can under the present one.'" *Hasan*, 176 W. Va. at 181, 342 S.E.2d at 146 (*quoting In re Stanworth*, 654 P.2d 1131, 1138 (Calif. 1982)).

In *Adkins*, sixteen inmates sought habeas corpus relief because a newly enacted good time statute was applied to their sentences even though their underlying crimes were committed prior to the effective date of the statute (May 1, 1978). 164 W. Va. at 293-94, 262 S.E.2d at 885-86. It was undisputed that, "under the former good time

19

statute, as applied, a prison inmate could earn more good time credit than under the [newly enacted] good time statute, and therefore was eligible for earlier release than a similarly situated inmate classified under the new system" *Id.* at 294, 262 S.E.2d at 886. *See id.* at 299, 262 S.E.2d 888-89 (further explaining that "the potential sentences of some of the petitioners were, in effect, lengthened through the application to them of the less beneficial terms of the new good time statute. This lengthening results from applying the lower deduction rate of the new law to their sentences, thereby delaying their release date."). Recognizing that "'depriving a prisoner of the right to earn good conduct deductions . . . materially "alters the situation of the accused to his disadvantage[,]"'"[21] we held that in order to avoid ex post facto principles, the newly enacted good time statute "must be construed to apply to those persons who committed offenses after May 1, 1978, and those presently incarcerated . . . for crimes committed prior to May 1, 1978, are entitled to good time credit as calculated under" the old statute. *Id.* at syl. pt. 2.

We find *Adkins* to be directly on point. "For purposes of assessing constitutional rights under the ex post facto clause of any penal statute intended to punish a person, the triggering date is the date of the offense." *State v. Deel*, 237 W. Va. 600, 608, 788 S.E.2d 741, 749 (2016). Senate Bill 713, on its face, applies to exclude *all* adult inmates who are committed pursuant to West Virginia Code § 62-12-26 from being granted

---

[21] *Id.* at 299, 262 S.E.2d at 888 (quoting *Greenfield v. Scafati*, 277 F. Supp. 644, 646 (D. Mass 1967), *aff'd*, 390 U.S. 713 (1968) (internal citation omitted)).

commutation from their sentences for good conduct except that, as of the effective date of the 2021 amendments (i.e., April 30, 2021), "an inmate who had good time calculated into his or her release date prior to October 21, 2020, is entitled to the benefit of the good time awarded or earned before that date, unless the good time was lost due to a disciplinary violation." Senate Bill 713's effect, therefore, is to preclude all inmates who are incarcerated for violating a condition of their supervised release from receiving good time after October 20, 2020, regardless of when their underlying crimes were committed. We find this provision to be an overt violation of the prohibition against ex post facto laws.

Accordingly, we hold that, in order to avoid the constitutional prohibition against ex post facto laws, West Virginia Code § 15A-4-17(a) [2021] shall not be applied to those inmates who committed the underlying crimes for which they are incarcerated pursuant to West Virginia Code § 62-12-26 prior to April 30, 2021, the effective date of the statute, regardless of any contrary language contained therein. In light of this holding, we conclude that S.B. 713, West Virginia Code § 15A-4-17, as amended, may not be applied to petitioner, whose underlying offense was committed in 2010, to preclude him from being granted commutation from his sentence for good conduct in accordance with that statute.[22]

---

[22] In recognition that "[t]he legislature has the primary right to define crimes and their punishments subject only to certain constitutional limitations[,]" syl. pt. 1, *State ex rel. Atkinson v. Wilson*, 175 W. Va. 352, 332 S.E.2d 807 (1984), and barring some other challenge to S.B. 713, inmates who are incarcerated pursuant to West Virginia Code § 62-

Continued . . .

21

## IV.    Conclusion

Based upon all of the foregoing, we grant petitioner habeas relief, and direct respondent to reinstate petitioner to parole and, further, to calculate his good time based upon the statute that was in effect at the time petitioner's underlying crime was committed. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Writ granted.

---

12-26 for offenses committed on or after the effective date of the statute may be excluded from being granted commutation from their sentences for good conduct in accordance with West Virginia Code § 15A-4-17. *See Adkins*, 164 W. Va. at 300 n.8, 262 S.E.2d at 889 n.8 ("As to those petitioners and others who are incarcerated on or after May 1, 1978 [i.e., the effective date of the newly enacted good time statute], for offenses committed on or after that date, the provisions of the new good time credit statute will apply.").