# CHARLESTON.

W. P. CLICK AND AMELIA CLICK *v.* R. C. CLICK AND
FANNIE CLICK.

(No. 5217.)

Submitted February 17, 1925.   Decided March 10, 1925.

1.  COURTS—*Inherent and Express Powers of Circuit Court Must be Exercised Within Territorial Jurisdiction Thereof Unless Enlarged by Statute.*

     The inherent, as well as the express powers of a circuit court must be exercised within the territorial jurisdiction of that court unless the fields of their use are enlarged by positive legislative enactment.  (p. 421).

     (Courts, 15 C. J. §119.)

                         98 W. Va.

2. STATUTES—*Absurd or Unjust Construction Should be Avoided.*

It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity. (p. 430).

(Statutes, 36 Cyc. pp. 1106, 1107.)

3. HABEAS CORPUS—*Circuit Court of One County May Issue Writ of Habeas Corpus Directed to Resident of Other County Not in Same Circuit, But Writ Should be Returnable Before Circuit Court of Such Other County, or Judge Thereof in Vacation, Unless Such Judge or Court is not Available.*

The circuit court of Cabell county may issue a writ in habeas corpus directed to a resident of Jackson county; but the writ should be made returnable before the circuit court of Jackson county, or the judge thereof in vacation, unless such judge or court is not available to hear the case. (p. 428).

(Habeas Corpus, 29 C. J. §119.)

4. SAME—*"Habeas corpus" is Suit in Which Writ is Issued Challenging the Right of One to Hold Another in Custody or Restraint.*

*Habeas Corpus* is a suit wherein probable cause therefor being shown, a writ is issued which challenges the right of one to hold another in custody or restraint. (p. 421).

(Habeas Corpus, 29 C. J. §1; Prerogative Writs, 31 Cyc. p. 1165.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Cabell County.

Proceeding in habeas corpus by W. P. Click and another against R. C. Click and another to determine right to custody of Voilet Click, an infant. Judgment for relators, and respondents bring error. *Reversed; writ dismissed.*

*J. L. Wolfe,* for plaintiffs in error.
*Duncan W. Daugherty,* for defendants in error.

HATCHER, JUDGE:

This is a proceeding in habeas corpus brought here by R. C. and Fannie Click, who complain of a judgment against them by the judge of the circuit court of Cabell county.

This action was instituted by W. P. and Amelia Click before the said court, who upon their petition, issued a writ against R. C. and Fannie Click, residents of Jackson county, requiring them to bring before it in Cabell county the body of Violet Click, an infant. R. C. and Fannie Click appeared specially and moved to quash the writ on the ground that they, as well as the infant, Violet, were residents of the county of Jackson, and that the circuit court of Cabell county had no jurisdiction to hear this case. This motion was overruled, and R. C. and Fannie Click excepted. Violet was then brought before the court, and upon a hearing of the matter, the court decrees that the custody of the infant be turned over by the said R. C. and Fannie Click to the relators, W. P. and Amelia Click.

The respondents charge the circuit court with two errors, to-wit: (a) making the writ returnable before itself, and (b) and upon the hearing, adjudging the relators to be entitled to the custody of the child, Violet.

The matters arising on the first assignment of error are novel in this court, so we deem it pertinent to advert briefly to the history of the writ.

## I.

*THE WRIT.*　　The origin of the writ of habeas corpus is lost in antiquity. Kane, J., in *U. S.* v. *Williamson,* 4 Am. L. R. 5, associates it with the Roman edict *De libero homine exhibendo.* Several writs were used in England, prior to Magna Charta, to test the legality of an imprisonment, such as *De odio et atia, corpus cum causa,* etc. But after King John on June 15th, 1215, signed the great Charta at Runnymede—"a pleasant meadow by the Thames where rushes grow in the clear water of the winding river and its banks are green with grass and trees"—, these other writs gave place to the summary and more efficacious writ of *Habeas Corpus ad subjiciendum.* This writ was claimed (though not always obtained) by American colonists to be their birthright *as Englishmen.* It has been zealously perpetuated by our Federal and State constitutions. It is called "the most cele-

brated writ in the English law," is regarded as "a palladium of liberty," and is admittedly one of "the greatest and most effective remedies known to the law." So great in fact is our veneration for this writ that our text writers hesitate to define it in ordinary terms. Even our staid old American and English Encyclopedia of Law can find only Latin words with which to express a part of its definition of the Latin phrase "*Habeas Corpus ad subjiciendum.*"

> "It is directed to the person detaining another and commands him to produce the body of the prisoner with the day and cause of his caption and detention *ad faciendum, subjiciendum et recipiendum,* and to submit to and receive whatever the judge or court issuing such writ shall consider in that behalf."

By reason of the antiquity of the writ, or the confusion resulting from its Latin words, or the veneration in which it is universally held, or perhaps for all three reasons, the writ has not been understood so well as most of our other legal proceedings. This misunderstanding has been in part fostered by the florid language of judges and text writers. It is commonly referred to both in text and decision as the "great common law writ of right" and as a "high prerogative common law writ." Yet this writ may be denied if the petitioner fails to set forth facts showing that he is entitled thereto *ex merito justicias.*

> "The rule is that a person restrained of his liberty is entitled as a matter of right to the writ, upon presentation to the proper officer or tribunal of his petition *showing proper ground therefor.*" Bailey on Habeas Corpus, par. 5, page 13.
>
> While the writ of habeas corpus is a "writ of right," is does not issue as a matter of course, but only when the application therefor contains allegations which, if true, would authorize the discharge of the person held in custody."
> *Simmons* v. *Georgia Iron & Coal Co.,* 117 Ga. 305.

It would therefore seem to be a "*writ of right* only in name and not in fact. The definitions on a prerogative writ are not at all illuminating.

"A 'prerogative writ' is one which does not issue
as of right, but in the sound discretion of the court
or judge."

*Ex parte Thompson* (N. J.), 96 Atl. 102.

"It is a prerogative writ, not ministerially issu-
able, that is not of course; and yet a writ of right on
a proper foundation being made by proof."

Bailey on Habeas Corpus, par. 2, page 6.

The term, "high prerogative writ," was at one time justi-
fied. At a remote date in England, it was issued by the
exercise of the royal prerogative. But so also were then writs
of procendendo, mandamus, prohibition and quo warranto.
Each of these writs was originally issued by virtue of the
King's high prerogative. Each writ was then, and is now, as
much entitled to the term *high prerogative,* as *habeas corpus.*
Referring to habeas corpus, Bailey says:

"At common law it stood on the same footing with
other prerogative writs such as mandamus, quo war-
ranto, certiorari, prohibition, etc., and was issued and
dealt with upon the like general grounds and princi-
ples."

Bailey on Habeas Corpus, par. 2.

The royal prerogative, as such, ceased to be invoked cen-
turies ago, the king graciously handing down the privilege to
issue this writ to the court of the King's Bench. Later, the
writ was issued by practically all English courts. Therefore,
the original significance of the words *high prerogative* have
lost their application to this writ. Because, however, of the
right of an applicant to have a hearing forthwith on his appli-
cation for the writ, and because of the further right of this
writ to have precedence over all other writs affecting the appli-
cant, it may still be denominated a *prerogative* writ.

There has also been some confusion in the decisions as to
the character of a proceeding by habeas corpus. One state
court, at least, has invested this writ with such sacrosanct
individuality that it is unwilling to class the writ as even a

civil or criminal action, but terms it a "summary remedy" a *"festinum remedium."*

The weight of authority, however, has acknowledged no worthy reason for distinguishing it from other legal procedure, and it is now generally regarded simply as a civil action or suit.

> "The proceedings under a petition for habeas corpus are in their nature civil proceedings, even when instituted to arrest a criminal prosecution, and secure personal freedom."
>
> *Ex-parte Tom Tony,* 108 U. S. 556.

> "When a prisoner petitions for a writ of habeas corpus out of chancery, he thereby commences a suit and prosecutes a cause in that court," etc.
>
> *Ex-parte Thompson,* (N. J.) 96 Atl. 102.

> "Regardless of what a habeas corpus proceeding should be called under the Code, which divides all judicial proceedings into actions and special proceedings, it is to all intents and purposes a civil suit—a proceeding in the nature of a civil action—in which the party seeking to establish his right to personal liberty is plaintiff within the meaning of paragraph 2601, Rev. Stat. 1898, regardless of the name by which such a party is commonly known, and the person charged with the wrong is an adverse party, to all intents and purposes a defendant, regardless of the name by which such a person is commonly known in such a proceeding."
>
> 110 Wis. 189, 62 L. R. A. 700.

> "We are of opinion that the proceeding upon habeas corpus is in the nature of an action. There are parties to the proceeding. In practice they are not usually called "plaintiff" and "defendant," but "relator" and "respondent"; but we do not consider that this matter of the names of the parties in the title of an action is important."
>
> Opinion in *State ex rel Newall* v. *Newall,* (Mont.) 34 Pac. 28.

> "But it is argued that the proceeding does not ripen into a cause, until there are two parties to it.
>
> This we deny. It was the *cause* of Milligan when the petition was presented to the Circuit Court. It

would have been the *cause* of both parties, if the court had issued the writ and brought those who held Milligan in custody before it. * * * In any legal sense, action, suit, and cause, are convertible terms. * * * One of the questions in *Weston* v. *City Council of Charleston*, was, whether a writ of prohibition was a suit; and Chief Justice Marshall says: "The term is certainly a comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords him." Certainly, Milligan pursued the only remedy which the law afforded him.

Again, in *Cohens* v. *Virginia*, he says: "In law language a suit is the prosecution of some demand in a court of justice." Also, "To commence a suit is to demand something by the institution of process in a court of justice; and to prosecute the suit is to continue the demand." When Milligan demanded his release by the proceeding relating to habeas corpus, he commenced a suit; and he has since prosecuted it in all the ways known to the law. One of the questions in *Holmes* v. *Jennison et al.* was, whether under the 25th section of the Judiciary Act a proceeding for a writ of habeas corpus was a "suit." Chief Justice Taney held, that, "if a party is unlawfully imprisoned, the writ of habeas corpus is his appropriate legal remedy. It is his suit in court to recover his liberty."

From opinion in *Ex-parte Milligan*, 4 Wallace 112.

From all which it appears that when unfrocked of Latin phrase and divested of traditional trappings, habeas corpus differs in no material respect from other legal writs. It is exactly like writs of error, mandamus, etc., in so far as it is issued (just as they are issued) *in the sound discretion* of a court or judge, upon *probable cause therefor* being shown. It is also an *action or suit*, (according to the word preferred), just as other legal remedies are actions, or suits.

"A decision in a habeas corpus proceeding now stands in no different position from one in any other proceeding."

*State* v. *Whitcher*, 117 Wis. 668.

If no prerogative power is conceded this procedure which *ipso facto* provokes the issuance of the writ; if it is not, in

fact, granted by courts and judges as a matter of *right;* if it is an *action* or *suit at law* just like other legal proceedings, it must then be subject to the same general rules of procedure as other actions under our statute. Consequently, the jurisdiction of the circuit court of Cabell county to hear this case will depend on either the general or special authority of circuit courts in such a matter.

## II.

*GENERAL JURISDICTION.* The state was divided into thirteen circuits when our constitution was first formed which have since been increased to twenty-three. Section 10 of article 8 of the constitution provided that with the exception of the first circuit,

> "for each of the other circuits, one judge shall be elected by the voters thereof. * * * During his continuance in office, the judge of a circuit court shall reside in the circuit of which he is judge."

Section 12 of the same article, in addition to giving circuit courts supervision, control, and appellate jurisdiction over inferior tribunals, gave,

> "original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest, exceeds $50.00; of all cases of habeas corpus, mandamus, quo warranto, and prohibition; and of all cases in equity, and of all crimes and misdemeanors."

From which we see the constitution conferred the same authority and the same powers alike on all the circuit judges of the several circuits. One circuit judge has exactly the same general powers and authority as another. No one will contend, however, that it was the intention of the constitution that circuit judges should exercise their authority and powers indiscriminately all over the state. Such an hypothesis is disposed of at once by the fact that the constitution required

the formation of circuits, the election of a judge by the voters of each circuit, and the residence of the judge during his term of office within his circuit. By the very act of dividing the state into circuits, with the provisions aforesaid, as to the election and residence of a judge, the constitution clearly contemplated territorial limitations upon each circuit judge. If not, why the circuits? Territorial jurisdiction was necessarily implied to prevent overlapping jurisdictions by circuit judges, and consequent abuse of their authority. The orderly conduct of litigation demands that each circuit court shall determine the cases within its circuit, and except when specially authorized, interfere in no way with cases and litigants without its circuit. By limiting their authority to their circuits, conflicts in jurisdiction are avoided and litigation and litigants are safeguarded from extra-territorial interference.

> "The rule is well settled that the inherent, as well as the express, powers of the court must be exercised within the territorial jurisdiction of that court, unless positive law enlarges the fields of their use."

Opinion in *State* v. *Buckner*, (Mo.) 234 S. W. 651.

> "The jurisdiction of the several district courts of this state and the judges thereof in civil matters is confined to their respective districts."
> *In re: Jewett* (Kansas), 77 Pac. 567.

> "No circuit judge or chancellor has any power to act beyond the territorial limits of his district, unless that power is specially given him by statute."

Opinion of court in *McLeod* v. *McLeod*, 88 Miss. 722.

> "The jurisdiction of the lower courts of a state is usually limited to certain counties or districts."
> 15 C. J. 817.

Our views on this subject find confirmation, if any be needed, in the legislative limitation in chapter 123, and elsewhere, in the code, hedging in the general jurisdiction of circuit judges, to persons and property within their respective circuits.

True, a judge of one circuit may grant an injunction effecting parties and property without his circuit, but this

authority is given by a special statute; and the injunction is heard before the judge or court of the circuit whose territorial jurisdiction embraces the parties or the cause of action. We find no warrant for, and see no reason for extending the general authority of circuit judges beyond their circuits, in the absence of express legislation thereon. Consequently, the circuit court of Cabell county had no jurisdiction to hear this case by virtue of its inherent or general authority.

### III.

*SPECIAL JURISDICTION* Section 1 of chapter III of the Code confers upon "the Supreme Court of Appeals, or any circuit court, or any judge of either court in vacation," the authority to issue the writ of habeas corpus, and section 2 of this chapter provides:

> "The writ shall be directed to the person in whose custody the petitioner is detained, and made returnable as soon as may be, before the court or judge ordering the same, or any other of the said courts or judges."

Relators contend that by virtue of the above statute, the circuit court of Cabell county, *being any circuit court*, had the right to issue the writ herein by virtue of section 1 of chapter III, and it had the further right, by reason of section 2, above, to have the writ returned before itself as the court *ordering the same*.

We take judicial notice that Jackson county is not within the same circuit as Cabell county. We also know that the two counties are not very far apart in point of distance. In this particular case, doubtless, little inconvenience was occasioned the respondents in having to attend the circuit court of Cabell county. But if we hold that the circuit court of Cabell county has jurisdiction in this proceeding to summon before it respondents of Jackson county, we thereby establish a rule of procedure which would enable the circuit court of Cabell county to assume jurisdiction to hear a like proceeding in which residents from other counties more distant from

Cabell than Jackson, were respondents. In fact, under such a rule the circuit court of Cabell county could assume jurisdiction in a like proceeding and determine the rights thereunder of residents of counties at the remotest points of the state from Cabell, such as Hancock on the north and Jefferson at the east. Respondents would be put to great and unnecessary expense and trouble when haled before judges of circuits remote from their own. We cannot concede that the legislature intended to pass such a rule of procedure. It certainly never intended that one of his own volition should have the privilege of selecting a court from the entire judiciary of the whole state as the court before whom his hearing could be had in habeas corpus. It certainly never intended that one confined in a jail in McDowell county could put the county to the expense and the officers of the law to the trouble of appearing in the county of Hancock, in order to establish the legality of the custody. If we construe these statutes as the relators contend, such a rule would, in so far as habeas corpus is concerned, bring the very confusion and overlapping of jurisdictions that the formation of circuits, with their territorial limitations, was designed to prevent. Why should we differentitate this writ, or *action,* from other writs or actions, which by general laws, are subject to territorial limitations? What good purpose do we serve thereby? Would justice be the better administered in such cases? We cannot see that it would. We think that a fair construction of these statutes taken in connection with other legislative acts warrant the view that while an application for a writ of habeas corpus can be made before, and the writ issued by, any circuit judge, it should be made returnable before the court whose territorial jurisdiction embraces the one in custody. If such circuit court is not available, relief may be sought by any one in the Supreme Court, whose territorial jurisdiction is state-wide. Unless this view be taken of the matter, instead of promoting justice, justice could be hampered, and in some cases defeated. For example, if a prisoner sentenced to jail for a misdemeanor, could secure a writ from and have a hearing thereon before any court anywhere in the state, he need not stop upon the refusal of one court to discharge him; but, after failing

in his first application, he could sue out a .writ before some different court. Thus, he could spend the term of his imprisonment, or a considerable part thereof, in travelling from one circuit to another, seeking relief in habeas corpus proceedings. A construction permitting such acts is manifestly absurd.

It is our duty as a court to construe a statute according to its true intent; and give to it such construction as will uphold the law and further justice. It is as well our duty to disregard a construction, though apparently warranted by the literal sense of the words used, which would lead to injustice and absurdity.

In reference to construing acts of the legislature, the Supreme Court of the United States has held:

"It cannot be presumed that the Legislature intended anything absurd. When, therefore, the words, when taken in their obvious and proper sense, lead to it, it is necessary to turn them from that sense just as far as is sufficient to avoid an absurdity, if from the whole perview of the law, and giving effect to all the words used in it, it may fairly be done."
*U. S.* v. *Fisher,* 2 Cranch, 400.

"It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, an obscurity of meaning exists, calling for judicial construction. *State ex rel. Heiden* v. *Ryan,* 99 Wis. 123. We must in that event, look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby, if possible, discover its real purpose; and if such purpose can reasonably be said to be within the scope of the language used, it must be taken to be a part of the law the same as if it were plainly expressed by the literal sense of the words used. In that way, while courts do not and cannot properly, bend words out of their reasonable meaning to effect a legislative purpose, they do give to words a liberal or strict interpretation within the bounds of reason, sacrificing literal sense and rejecting every interpretation not in harmony with the evident intent of the

lawmakers, rather than that such intent shall fail.''
*Rice and others* v. *Ashland Co.,* 108 Wis. 189.   84 N.
W. 189.

''As it is the duty of courts to execute all laws
according to their true intent and meaning, that in-
tent, when collected from the whole and every part
of the statute taken together, must prevail, even over
the literal sense of the terms, and control the strict
letter of the law, where the letter would lead to pos-
sible injustice, contradiction, and absurdity.''

Smith's Commentaries on Const. Construction.
par. 515.  p. 662.

''The mere literal construction of a section in a
statute ought not to prevail if it is opposed to the
intention of the legislature apparent by the statute;
and if the words are sufficiently flexible to admit of
some other construction it is to be adopted to effect-
uate that intention.  The intent prevails over the
letter, and the letter will, if possible, be so read as to
conform to the spirit of the act.  'While the intention
of the legislature must be ascertained from the words
used to express it, the manifest reason and the obvious
purpose of the law should not be sacrificed to a literal
interpretation of such words.'  Words or clauses may
be enlarged or restricted to effectuate the intention
or to harmonize them with other expressed provisions.
Where general language construed in a broad sense
would lead to absurdity it may be restrained.  The
particular inquiry is not what is the abstract force
of the words or what they may comprehend, but in
what sense they were intended to be used as they are
found in the act.''

Lewis' Sutherland Statutory Construction, par.
376, p. 721.

Support of our views herein is found in the decisions of
courts of other states having constitutional and legislative
provisions similar to those of West Virginia.

The California statute, like ours, confers authority on all
its courts and judges to issue the writ:

''The writ of habeas corpus may be granted by the
Supreme Court or any Judge thereof, or any District
or County Court in term time, or by any Judge of
such, at any time, whether in term or vacation.''

It also provides that the Judge or Court who issued it shall immediately after the return, proceed to hear and examine, etc.

Yet, upon the application of one Ellis for habeas corpus, the court held as follows:

"The writ of habeas corpus should not issue to run out of the county, unless for good cause shown; as the absence, disability or refusal to act of the local Judge, or other reason, showing that the object and reason of the law require its issuance.

If the local Judge refuses to act, then resort may be had to officers out of the county.

The legislature can never have intended that a party imprisoned under sentence of conviction for a misdemeanor, should have the privilege from selecting from the judiciary of the whole state the individual to whom he prefers to make his application, however distant from the place of his detention, and compel the officer having him in charge to convey him at the expense of the county.

It is the duty of the courts to execute all laws according to their true intent and meaning; that intent, when collected from the whole and every part of the statute taken together, *must prevail, even over the literal sense of the terms, and control the strict letter of the law,* when the letter would lead to possible injustice, contradiction and absurdity."

11 Cal. 222.

The Mississippi statute in relation to habeas corpus is also practically the same as ours:

"The writ of habeas corpus may be granted by a judge of the Supreme Court, or a judge of the circuit court, or chancery court, in term time, or in vacation, returnable before himself, or another judge."

Section 2444, Code.   1892, Mississippi.

In *McLeod* v. *McLeod,* reported in 88 Miss. 722, the court held as follows:

"Code 1892, par. 2448, providing that a writ of habeas corpus may be granted by any judge or chancellor, returnable before himself or any other judge, does not authorize the issuance of a writ to be served

in another district returnable before the judge granting it.''

''Where a circuit judge or chancellor issues a writ of habeas corpus to be served in a district other than his own, it must be made returnable before a judge or chancellor of the other district, and not before himself.''

In its opinion the court said:

''By Code 1906, par. 2448, the writ of habeas corpus may be granted by any judge or chancellor, 'returnable before himself or any other judge'; but this statute means that the issuing judge can make the writ returnable before himself only in case it is within the territorial limits of the jurisdiction confided to him. If the writ is to run within his district, he may make it returnable before himself or another judge in the same district; but, if the writ is to run in a district other than his own, he must make it returnable before a judge or chancellor acting for the district in which the writ is to go. We cannot subscribe to the idea that the legislature ever intended that a judge or chancellor should have power to issue writs of habeas corpus from one district of the state to another and make same returnable before himself, thus bringing parties from one end of the state to the other, entailing great expense, and in many instances imposing great hardship.''

We therefore hold that the circuit court of Cabell county had neither general nor special authority to make the writ returnable before itself.

Holding as we do on the first assignment of error, it is unnecessary to discuss the other assignment.

The judgment of the circuit court of Cabell county is therefore reversed; the custody of Violet Click is restored to R. C. and Fannie Click; and the writ herein dismissed.

*Reversed; writ dismissed.*