**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2022 Term**

**FILED**

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

**No. 21-1001**

_____

**CITY OF WHEELING,**
Petitioner,

**V.**

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA;**
**AND CITY OF BENWOOD,**
Respondents.

_____

**Appeal from the Public Service Commission of West Virginia**
**Case No. 21-0372-S-WI**

**AFFIRMED**

_____

**Submitted: April 13, 2022**
**Filed: April 26, 2022**

**Rosemary Humway-Warmuth**
**Office of City Solicitor**
**City of Wheeling**
**Wheeling, West Virginia**

**Robert R. Rodecker**
**John R. McGhee**
**Kay Casto & Chaney PLLC**
**Charleston, West Virginia**
**Attorneys for the Petitioner**

**Jessica M. Lane**
**Natalie E. Thomas**
**Public Service Commission of**
**West Virginia**
**Charleston, West Virginia**
**Attorneys for the Respondent, Public**
**Service Commission of West Virginia**

**JUSTICE MOATS delivered the Opinion of the Court.**

**JUSTICE ALAN D. MOATS, sitting by temporary assignment.**

**JUSTICE WALKER and JUSTICE WOOTON dissent and reserve the right to file dissenting opinions.**

**SYLLABUS BY THE COURT**

1.      "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission[ of West Virginia]*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: [ ] whether the Commission exceeded its statutory jurisdiction and powers[.]" Syllabus point 2, in part, *Sierra Club v. Public Service Commission of West Virginia*, 241 W. Va. 600, 827 S.E.2d 224 (2019) (internal citation omitted).

2.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

3.      "A statute that is ambiguous must be construed before it can be applied." Syllabus point 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

4.      "It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925).

**Moats, Justice:**

Petitioner City of Wheeling ("Wheeling") appeals Respondent Public Service Commission of West Virginia's ("PSC") November 12, 2021 final order and its December 1, 2021 order denying Wheeling's petition for reconsideration and motion to stay. Pursuant to a complaint filed by Respondent City of Benwood[1] ("Benwood"), in which Benwood challenged Wheeling's revised rate for sewer treatment services, the PSC began an investigation in accordance with West Virginia Code § 24-2-1(b)(6) (eff. 2020). In its November 12, 2021 final order, the PSC recalculated the revised rate for sewer treatment services sold by Wheeling and noted that the revised rate was applicable for all of Wheeling's wholesale customers. In response, Wheeling filed a petition for reconsideration and a motion to stay, arguing that the PSC had no subject matter jurisdiction when it issued the November 12, 2021 final order pursuant to the 120-day time period in West Virginia Code § 24-2-1(b)(6). The PSC denied Wheeling's petition and motion, and this appeal followed. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find that the PSC had jurisdiction over the dispute when it issued its November 12, 2021 final order. Accordingly, we affirm the rulings of the PSC.

---

[1] Benwood was the complainant below and is listed as a respondent in this matter. However, despite being a party in the proceedings below, Benwood has not filed any documents in this appeal.

# I.

## FACTUAL AND PROCEDURAL HISTORY

On April 6, 2021, Wheeling adopted a city ordinance increasing the rate charged to its wholesale sewage treatment customers by 45% to $3.86/Mgal. Wheeling filed the city ordinance with the PSC on April 14, 2021. Then, on May 3, 2021, Benwood—a political subdivision of the state and wholesale purchaser of sewer treatment services provided by Wheeling—filed a complaint with the PSC, pursuant to West Virginia Code § 24-2-1(b)(6), challenging Wheeling's revised rate. West Virginia Code § 24-2-1(b)(6) provides:

> (b) The jurisdiction of the [PSC] over political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers and annual combined gross revenues of $3 million or more that are political subdivisions of the state is limited to:
>
>    . . . .
>
> (6) Investigation and resolution of disputes between a political subdivision of the state providing wholesale water and/or wastewater treatment or other services, whether by contract or through a tariff, and its customer or customers, including, but not limited to, rates, fees, and charges, service areas and contested utility combinations: *Provided, That any request for an investigation related to a dispute that is based on the act or omission of the political subdivision shall be filed within 30 days of the act or omission of the political subdivision and the [PSC] shall resolve the dispute within 120 days of filing. The 120-day period for resolution of the dispute may be tolled by the [PSC] until the necessary information showing the basis of the rates, fees, and charges or other information required by the [PSC] is filed:* Provided, however, That the disputed rates, fees, and charges fixed by the political subdivision providing separate or combined water and/or sewer services shall remain

2

> in full force and effect until set aside, altered or, amended by the [PSC] in an order to be followed in the future.

(Emphasis both omitted and added).

On June 2, 2021, the PSC concluded that Wheeling's ordinance did not include all the information necessary to show the basis of Wheeling's rate increase, and therefore, the PSC lacked the information needed to evaluate Benwood's complaint. As such, the PSC ordered Wheeling to provide additional information within thirty days, including a Class Cost of Service Study in support of its revised rate. The PSC also tolled the 120-day time period, in accordance with West Virginia Code § 24-2-1(b)(6), pending the filing of the requested information. However, for reasons that are unclear from the record, the date was tolled for forty-five days until October 15, 2021.[2]

On July 2, 2021, Wheeling filed the information required by the PSC, including a Class Cost of Service Study. Upon receipt of the information, PSC staff informed Wheeling that the Class Cost of Service Study contained errors. Thirteen days later, on July 15, 2021, Wheeling filed a revised Class Cost of Service Study. Thereafter, on July 19, 2021, PSC Staff filed a motion requesting that the proceedings be tolled for thirteen days because Wheeling's first Class Cost of Service Study contained errors and failed to support Wheeling's rate increase.

---

[2] Wheeling was given thirty days to provide a Class Cost of Service Study. However, rather than toll the deadline for thirty days, the deadline was tolled for forty-five days. The briefs and order do not make clear as to why the tolling was for forty-five days.

3

By order dated July 22, 2021, the PSC granted an extension, ordering that the deadline for a decision was now October 28, 2021 (thirteen days from the previously tolled deadline, October 15). A hearing before an administrative law judge was conducted in August, and a recommended decision was issued on September 13, 2021. In the recommended decision, Wheeling's revised rate for sewer treatment services of $3.68/Mgal was accepted. Benwood then filed exceptions to the recommended decision on September 24, 2021, and the PSC's staff filed exceptions to the recommended decision on September 28, 2021. Wheeling replied to the exceptions filed by the PSC's staff.

On October 26, 2021, the PSC issued an order in which it found that Wheeling did not file all of the necessary information showing the basis of its revised rate and other information required by the PSC until July 15, 2021. Therefore, the PSC concluded that West Virginia Code § 24-2-1(b)(6) authorized the deadline to be tolled 120 days from July 15, 2021, the date that Wheeling filed all of the necessary information— and ordered the deadline extended to November 12, 2021.

On November 12, 2021, the PSC issued its final order and recalculated the rate for wholesale sewer treatment services to $2.87/Mgal. The PSC required Wheeling to charge the lower wholesale rate beginning on the date of the final order. On November 22, 2021, Wheeling filed a petition for reconsideration of the final order and a motion to stay, arguing that the 120-day time period had passed, and the PSC did not have subject matter jurisdiction over the dispute, pursuant to West Virginia Code § 24-2-1(b)(6), when the PSC

4

issued its final order on November 12, 2021. On December 1, 2021, the PSC denied Wheeling's petition for reconsideration and motion to stay, concluding that "W. Va. Code § 24-2-1(b)(6) authorizes the [PSC] to toll the 120-day period for resolution of this dispute from July 15, 2021." This appeal followed.

## II.

### STANDARD OF REVIEW

The case sub judice is before this Court on appeal from an order entered by the PSC. With respect to this Court's review of such decisions, we previously have held:

> The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission[ of West Virginia*], 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: [ ] whether the Commission exceeded its statutory jurisdiction and powers[.]

Syl. pt. 2, in part, *Sierra Club*, 241 W. Va. 600, 827 S.E.2d 224 (internal citation omitted).

Additionally, we are tasked with interpreting statutory language. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W. Va. 250, 539 S.E.2d 757 (2000). Mindful of these principles, we now consider the parties' arguments.

5

# III.

## DISCUSSION

In the case sub judice, Wheeling contends that the PSC: (1) erred in exercising subject matter jurisdiction; (2) exceeded its authority when it issued a final decision after the expiration of the time period provided in West Virginia Code § 24-2-1-(b)(6); and (3) acted arbitrarily when it made tolling calculations. These arguments will be addressed in turn.

Wheeling contends that the text of West Virginia Code § 24-2-1(b)(6) is unambiguous and therefore, should be applied as written. For Wheeling, the statute is clear that the PSC only has subject matter jurisdiction to review and resolve disputes involving political subdivisions providing wholesale wastewater treatment services during the 120-day time period provided in the statute, starting on the day that the complaint is filed. Wheeling argues that 120-day time period began on May 3, 2021—the day Benwood filed its complaint. This would have set the original deadline as August 31, 2021.

Wheeling first argues that the PSC erred in its June 2, 2021 order when the PSC tolled the 120-day time period for forty-five days when it only gave Wheeling thirty days to provide a Class Cost of Service Study. Wheeling contends that, pursuant to West Virginia Code § 24-2-1(b)(6), the PSC may toll the 120-day time period for resolving the parties' dispute only until the necessary information is obtained, not longer. Wheeling

6

acknowledges that the PSC was within its authority to toll the statute; however, Wheeling does not agree that forty-five days was proper. By adding forty-five days, the deadline for a decision moved from August 31, 2021, to October 15, 2021—when it should have been tolled for thirty days to September 30.

Next, Wheeling argues that the PSC erred in its July 22, 2021 order by tolling the 120-day time period for an additional thirteen days to allow the PSC's staff adequate time to review Wheeling's revised Class Cost of Service Study, which moved the deadline for a decision from September 30, 2021, to October 13, 2021 (or October 28 if the 45-day calculation is used). Accordingly, Wheeling argues that pursuant to West Virginia Code § 24-2-1(b)(6), the last day on which the PSC had jurisdiction to issue a final order in this case was October 13, 2021, and that the PSC failed to do so by this date.

Lastly, Wheeling contends that the PSC erred by once again tolling the decision deadline for a third time on October 26, 2021. According to Wheeling, the PSC deviated from its previous tolling decisions and started a new 120-day time period from the day Wheeling filed its revised Class Cost of Service Study on July 15, 2021. Wheeling states that the PSC was unauthorized to make this "inappropriate calculation," and that in doing so, the PSC was exceeding the jurisdiction bestowed upon it in West Virginia Code § 24-2-1(b)(6).

The PSC refutes all of Wheeling's arguments and asserts that the 120-day time period was properly tolled—in accordance with the statute—"until the necessary information" was filed. According to the PSC's argument, Wheeling did not provide the PSC with the revised Class Cost of Service Study containing all of the necessary information until July 15, 2021, and the dispute was properly resolved within 120 days of that date, which was November 12, 2021. Furthermore, the PSC contends that although the time period was tolled two times before the ultimate tolling in October of 2021, the PSC recognized that it "did not invoke its full authority to toll the decision due date" at first, but then "recognized and corrected this oversight when it issued its October 26, 2021[ ] [o]rder that tolled the decision due date of this dispute 120 days from July 15, 2021."

The crux of this case revolves around whether the PSC had subject matter jurisdiction over the dispute between Wheeling and Benwood when it issued its final order on November 12, 2021. The PSC's jurisdiction is exclusively governed by West Virginia Code § 24-2-1(b)(6). As provided above, West Virginia Code § 24-2-1(b)(6) provides:

> (b) The jurisdiction of the [PSC] over political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers and annual combined gross revenues of $3 million or more that are political subdivisions of the state is limited to:
>      . . . .
>
> (6) Investigation and resolution of disputes between a political subdivision of the state providing wholesale water and/or wastewater treatment or other services, whether by contract or through a tariff, and its customer or customers, including, but not limited to, rates, fees, and charges, service areas and contested utility combinations: *Provided, That any request for*

8

*an investigation related to a dispute that is based on the act or omission of the political subdivision shall be filed within 30 days of the act or omission of the political subdivision and the [PSC] shall resolve the dispute within 120 days of filing. The 120-day period for resolution of the dispute may be tolled by the [PSC] until the necessary information showing the basis of the rates, fees, and charges or other information required by the [PSC] is filed:* Provided, however, That the disputed rates, fees, and charges fixed by the political subdivision providing separate or combined water and/or sewer services shall remain in full force and effect until set aside, altered or, amended by the [PSC] in an order to be followed in the future.

(Emphasis both omitted and added).

Under the provisions of West Virginia Code § 24-2-1(b)(6), the PSC has limited jurisdiction over rate disputes between political subdivisions and its customers. *See generally* W. Va. Code § 24-2-1(b)(6). The statute provides that the PSC shall resolve disputes within 120 days of the filing of a wholesale customer's complaint but permits the PSC to toll the 120-day time period "until the necessary information showing the basis of the rates, fees, and charges or other information required by the [PSC] is filed." *Id.*

Because the resolution of this matter turns upon the meaning of statutory provisions, the rules of statutory construction are essential to our analysis. Where the Legislature's intent is not clear, and the statute's language is ambiguous, we must construe the statute before applying it. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. pt.

9

1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.").

West Virginia Code § 24-2-1(b)(6) provides that "[t]he 120-day period for resolution of the dispute may be tolled by the [PSC] until the necessary information showing the basis of the rates, fees, and charges or other information required by the [PSC] is filed[.]"  This Court has held:

> It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. pt. 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925).

The PSC's jurisdiction over a locally regulated sewer treatment utility rate is invoked when a wholesale customer files a formal complaint. *Id.*  However, West Virginia Code § 24-2-1(b)(6) clearly contemplates that the 120-day time period for resolution of the dispute be tolled until the PSC has all of the *necessary rate justification information* to adjudicate the complaint.  Because the first Class Cost of Service Study submitted by Wheeling was incomplete, the PSC did not have all of the necessary information to adequately evaluate the dispute until the revised Class Cost of Service Study was filed on July 15, 2021.  Therefore, the PSC tolled the 120-day time period until July 15, 2021— giving it until November 12, 2021 to resolve the dispute.  By giving the PSC a full 120

days to evaluate disputes with *all of the necessary information* before it, the statute meets the Legislature's goal for the PSC—to timely evaluate disputes and to safeguard the interests of the public and the utilities provided to it. Therefore, the PSC properly tolled the 120-day time period for resolution of the dispute. This interpretation ensures that the PSC will have sufficient time to consider all of the necessary information provided to it.

The word "toll" has not been defined by the Legislature, and there are no official interpretations or rules promulgated by the PSC that speak to the subject matter in West Virginia Code § 24-2-1(b)(6). While both parties' arguments are consistent with the statutory language, we interpret West Virginia Code § 24-2-1(b)(6) to provide that the 120-day time period begins on the date the necessary information is filed. This calculation is just and reasonable in light of the statutory language in West Virginia Code § 24-2-1(b)(6). Additionally, this interpretation ensures that the PSC will have sufficient time to evaluate *all* of the necessary information as a whole before issuing a final order.

Finally, to read the statute according to the argument put forth in Wheeling's brief would lead to unfair and unwarranted results. Wheeling's "place on hold" interpretation would permit the non-complaining party to drag its feet throughout the 120-day time period by failing to timely provide all of the information necessary for the PSC to resolve the complaint. In these disputes, because the non-complaining party has absolute control over whether the PSC has the necessary information before it to resolve the

11

complaint, it is a fair and reasonable interpretation of the statute to afford the PSC the full 120-day time period after all of the necessary information is provided to render its decision.

Accordingly, this Court concludes that the PSC had subject matter jurisdiction over the Wheeling-Benwood dispute at the time it issued its final order on November 12, 2021.

## IV.

## CONCLUSION

For the reasons set forth above, we find no error in the PSC's November 12, 2021 final order, or in the December 1, 2021 order denying Wheeling's petition for reconsideration and motion for stay.

Affirmed.