IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-0275

_____

FILED

June 10, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOGAN-MINGO AREA MENTAL HEALTH, INC.,
Employer Below, Petitioner,

V.

DAVID M. LESTER,
Claimant Below, Respondent.

_____

Appeal from the Workers' Compensation Board of Review
BOR Appeal No. 2057470
JCN No. 2017024206

REVERSED AND REMANDED
WITH INSTRUCTIONS

_____

Submitted: January 9, 2024
Filed: June 10, 2024

Steven K. Wellman, Esq.
Jenkins Fenstermaker, PLLC
Huntington, West Virginia,
James W. Heslep, Esq.
Jenkins Fenstermaker, PLLC
Clarksburg, West Virginia
Attorneys for the Petitioner

Anne L. Wandling, Esq.
Wandling Law Office, L.C.
Logan, West Virginia
Attorney for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "The purpose of W. Va. Code § 23-4-9b (2003) is to disallow any consideration of any preexisting definitely ascertainable impairment in determining the percentage of permanent partial disability occasioned by a subsequent compensable injury, except in those instances where the second injury results in total permanent disability[.]" Syllabus point 2, in part, *SWVA, Inc. v. Birch*, 237 W. Va. 393, 787 S.E.2d 664 (2016).

2.      When a claimant has preexisting, definitely ascertained impairments to multiple body parts and then sustains new compensable injuries that affect the previously impaired body parts, the proper method for apportioning the preexisting impairments is to first determine the claimant's total, unapportioned whole-person impairment using the Combined Values Chart of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). Then, the total amount of the claimant's preexisting impairment that has been definitely ascertained must be deducted from the total, unapportioned whole-person impairment to calculate the amount of the claimant's Permanent Partial Disability award.

**BUNN, Justice:**

This case raises the question of the proper method for apportioning a preexisting impairment, as required by West Virginia Code § 23-4-9b (eff. 2003), when the preexisting impairment has been definitely ascertained, and when both the preexisting impairment and the current injury affect multiple body parts.[1] Petitioner, the employer, Logan-Mingo Area Mental Health, Inc. ("Logan-Mingo"), argues that the Workers' Compensation Board of Review ("BOR") erred by using a method of apportionment that resulted in the Respondent, Mr. David Lester, receiving a cumulative Permanent Partial Disability award ("PPD award") that exceeded his actual, total degree of whole-person impairment. We agree and find that the proper method for apportioning preexisting impairments that have been definitely ascertained and impact multiple body parts is to first determine a claimant's final, unapportioned whole-person impairment using the Combined Values Chart from the American Medical Association, *Guides to the Evaluation of Permanent Impairment*, 322-24 (4th ed. 1993) ("AMA *Guides*"), and then to deduct the entire amount of the preexisting impairment, also calculated by using the Combined Values Chart. Because the BOR endorsed a different method of apportionment, we reverse its decision and remand this case with instructions to reinstate the decision of the Workers'

---

[1] In using the phrase "body parts," we refer to separate areas of the body that have sustained distinct injuries for which separate impairment ratings have been assigned. *See, e.g.*, Am. Med. Ass'n*, Guides to the Evaluation of Permanent Impairment*, 610 (Robert D. Rondinelli, MD, PhD, et al. eds., 6th ed. 2008) (using the phrase "body part" in explaining the Combined Values Chart).

1

Compensation Office of Judges ("OOJ"), which was based on the correct method of apportionment.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In a 1999 workers' compensation claim for injuries to his lumbar spine and thoracic spine,[2] Mr. Lester was assessed with a whole-person impairment[3] of 14% for his lumbar spine and 7% for his thoracic spine. Applying the Combined Values Chart,[4] these two impairments resulted in a 20% PPD award in that claim. Mr. Lester filed the claim at issue in this case after he fell off a ladder and sustained compensable injuries on April 6, 2017. The fall resulted in additional impairments to Mr. Lester's lumbar spine and thoracic spine, along with impairments to his cervical spine, left shoulder, right knee, and left knee.

---

[2] In 1999, Mr. Lester stepped into a rut while carrying heavy boards and injured his mid and lower back.

[3] In the circumstances presented here, "whole-person impairment" or "whole-body medial impairment" are synonymous with "permanent partial disability." *See* W. Va. Code § 23-4-6(i) ("For the purposes of this chapter, with the exception of those injuries provided for in subdivision (f) of this section and in section six-b [§ 23-4-6b] of this article, *the degree of permanent disability other than permanent total disability shall be determined exclusively by the degree of whole body medical impairment that a claimant has suffered.*" (emphasis added)).

[4] The Combined Values Chart is "[a] method used to combine 2 or more impairment percentages, derived from the formula $A + B (1 - A) = $ Combined Values of A and B." Am. Med. Ass'n, *supra* note 1. This formula ensures that the total value of two or more impairments "will not exceed 100% whole person impairment and takes into account the impact of impairment from one body part on impairment of another body part." *Id.*

2

On April 2, 2020, the claims administrator granted Mr. Lester an 8% PPD award for his right and left knees, based upon a 4% whole-person impairment for each knee, as he had achieved maximum medical improvement for those injuries. Neither Mr. Lester nor Logan-Mingo disputed this award. Mr. Lester's remaining injuries had not yet reached maximum medical improvement, so no whole person impairment for those conditions was assessed.

Once Mr. Lester achieved maximum medical improvement for the remainder of his injuries, Dr. Bruce Guberman performed an independent medical evaluation at the request of the claims administrator and recounted the following whole person impairments in his report dated April 16, 2020: 8% for the cervical spine, 8% for the lumbar spine; 7% for the thoracic spine; 4% for the left shoulder, 4% for the right knee, and 4% for the left knee. Properly applying the Combined Values Chart establishes that Mr. Lester's resulting total whole-person impairment is 30%. However, before combining these impairments, Dr. Guberman first offset the 8% lumbar spine impairment by the preexisting 14% lumbar spine impairment from Mr. Lester's earlier claim and concluded that Mr. Lester had 0% lumbar spine impairment attributable to his current injury. Dr. Guberman similarly offset the 7% thoracic spine impairment by the preexisting 7% thoracic spine impairment to find Mr. Lester had 0% thoracic spine impairment attributable to his current injury. Then, adding up the remaining impairment ratings using the Combined Values Chart, Dr.

Guberman concluded that Mr. Lester had a 19% whole-person impairment attributable to his injuries included in this claim.

Dr. Rebecca Thaxton performed a claim review, also on behalf of the claims administrator.[5] Relying on Dr. Guberman's impairment ratings, Dr. Thaxton's review suggested a different method of apportioning Mr. Lester's preexisting impairments. She combined all of Mr. Lester's current, unapportioned impairment ratings using the Combined Values Chart, for a total whole-person impairment of 30%. Deducting Mr. Lester's prior 20% PPD award from the 30% whole-person impairment results in his whole-person impairment attributable to the injuries from this claim being 10%.

On May 18, 2020, the claims administrator granted Mr. Lester an additional 2% PPD award based on Dr. Thaxton's suggested method of apportioning his preexisting impairment, which, when added to the 8% PPD award previously granted for Mr. Lester's right and left knee impairments, resulted in a 10% PPD award for this claim. Mr. Lester protested the award, and the OOJ affirmed the claims administrator by order entered on October 1, 2021. Mr. Lester then appealed to the BOR, which entered an order on March 23, 2022, reversing the OOJ and granting a 19% PPD award in this claim based on Dr. Guberman's method of apportionment. This appeal by Logan-Mingo followed.

---

[5] Dr. Thaxton did not conduct a medical evaluation.

4

## II.

## STANDARD OF REVIEW

When we review a BOR decision that reverses the OOJ, we give deference to the findings, reasoning, and conclusion of the BOR. Thus,

> the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision.

W. Va. Code § 23-5-15(e). Under this deferential standard, we also "may not conduct a de novo reweighing of the evidentiary record." *Id.* But, we apply "a de novo standard of review to questions of law arising in the context of decisions issued by the Board of Review." *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 298, 879 S.E.2d 779, 785 (2022).

## III.

## DISCUSSION

As explained below, Dr. Thaxton suggested the proper method of apportioning Mr. Lester's preexisting impairment, which was to deduct the total amount of his preexisting impairment, calculated at 20% in his prior claim, from the total amount of his current, unapportioned whole-person impairment, calculated at 30% using the

5

Combined Values Chart, to conclude that he was entitled to a 10% PPD award for this claim. In other words, deducting Mr. Lester's preexisting impairment is the final step of calculating the proper amount of his PPD award for this claim. To reach this conclusion, we first review the arguments presented on appeal, and then address a flaw in the BOR's reasoning. Lastly, we consider relevant statues and cases and explain how the method suggested by Dr. Thaxton corresponds with that law and supports the goal of compensating a claimant in an amount equal to his actual level of impairment resulting from a particular claim.

Logan-Mingo argues that the BOR erred by adopting Dr. Guberman's method of apportionment because it resulted in Mr. Lester's aggregate PPD awards equaling more than his actual degree of permanent partial disability. To support its reasoning, Logan-Mingo points to the fact that when Dr. Thaxton combined all of Mr. Lester's current, unapportioned impairments, his total whole-person impairment was only 30%. Further, during deposition testimony, Dr. Guberman agreed that combining all of Mr. Lester's current, unapportioned impairments placed his whole-person impairment at 30%, yet Dr. Guberman's method of apportionment resulted in Mr. Lester receiving cumulative PPD awards of 39%. Logan-Mingo contends that this 39% PPD award is erroneous and contrary to West Virginia Code § 23-4-9b and *SWVA, Inc. v. Birch*, 237 W. Va. 393, 787 S.E.2d 664 (2016)—considering no physician found that percentage of whole-person impairment.

Mr. Lester responds that Dr. Guberman used the proper method of apportioning his preexisting impairment by complying with Section 2.2 of the AMA *Guides*, which requires an evaluator to first determine the whole person impairment for each body part.[6] Before utilizing the Combined Values Chart to calculate the total amount of impairment resulting from Mr. Lesters various impairments, Dr. Guberman first reduced each distinct impairment by the amount of the previous award for the same body part. Mr. Lester claims this is the method required by W. Va. Code § 23-4-9d and Rule 20.[7] We find the BOR erred by adopting Dr. Guberman's method of apportioning Mr. Lester's preexisting impairment.

In reaching its conclusion, the BOR erroneously ignored Dr. Thaxton's evaluation of Mr. Lester's records based upon its interpretation of our decision in *Repass v. Workers' Compensation Division*, 212 W. Va. 86, 569 S.E.2d 162 (2002). The BOR rejected Dr. Thaxton's calculation in favor of Dr. Guberman's because he performed the only independent medical evaluation of Mr. Lester. In doing so, the BOR relied on

---

[6] Section 2.2 of the AMA *Guides* provides "Rules for Evaluations," but it does not address apportioning preexisting impairments. Am. Med. Ass'n, *Guides to the Evaluation of Permanent Impairment*, 8-9 (4th ed. 1993).

[7] Mr. Lester provides no specific citation for "Rule 20," thus he appears to be generally referring to Title 85, Series 20 of the West Virginia Code of State Rules, which includes, in relevant part, guidelines for impairment evaluations and ranges of PPD awards for certain injuries. He cites to no provision within Series 20 that addresses the proper method to apportion preexisting impairments, and we have found none.

7

language from *Repass* stating "the Commissioner is to make permanent partial disability awards solely on the basis of the doctor's impairment evaluation." 212 W. Va. at 95, 569 S.E.2d at 171. Given that Dr. Thaxton evaluated Mr. Lester's level of impairment by reviewing Dr. Guberman's records, it appears that the BOR misconstrued *Repass* as requiring PPD awards to be based only on a recommendation from a doctor who has performed a physical examination. *Repass* imposes no such restriction. Rather, *Repass* discussed 1995 amendments to West Virginia Code § 23-4-6(i) and observed a change from the prior rule that distinguished "impairment," a medical question, from "disability," a legal question. Under the old rule, the Workers' Compensation Commissioner calculated a claimant's PPD award by considering a doctor's opinion on impairment and "evidence of the claimant's earning capacity, the effect of the impairment on the claimant's efficiency at work, and the effect of the impairment on the claimant's pursuit of normal everyday living." *Repass,* 212 W. Va. at 95, 569 S.E.2d at 171. However, after the 1995 amendments, the Code directed that "'the degree of permanent disability other than permanent total disability shall be determined exclusively by the degree of whole body medical impairment that a claimant has suffered.'" W. Va. Code § 23-4-6(i). The *Repass* Court explained the significance of this amendment was that "the percentage of medical impairment now equals the percentage of permanent partial disability, and the Commissioner cannot take into consideration any other factors." *Repass*, 212 W. Va. at 95, 569 S.E.2d at 171 (quoting *Wagner v. Workers' Comp. Div.*, 205 W. Va. 186, 191-92, 517 S.E.2d 283, 288-89 (1998) (per curiam) (Starcher J., concurring)). Accordingly, *Repass* does not prohibit

8

consideration of a medical evaluation, such as Dr. Thaxton's, that is based on a claim review instead of a physical examination.

Turning to apportionment, West Virginia Code § 23-4-9b addresses apportioning a PPD award to account for preexisting impairments:

> Where an employee has a definitely ascertainable impairment resulting from an occupational or a nonoccupational injury, disease or any other cause, whether or not disabling, and the employee thereafter receives an injury in the course of and resulting from his or her employment, unless the subsequent injury results in total permanent disability within the meaning of section one, article three of this chapter [§ 23-3-1 (repealed in 2022)], *the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment. . . .*

W. Va. Code § 23-4-9b (eff. 2003) (emphasis added). We have held that,

> The purpose of W. Va. Code § 23-4-9b (2003) is to disallow any consideration of any preexisting definitely ascertainable impairment in determining the percentage of permanent partial disability occasioned by a subsequent compensable injury, except in those instances where the second injury results in total permanent disability[.]

Syl. pt. 2, in part, *Birch*, 237 W. Va. 393, 787 S.E.2d 664. In this case, Mr. Lester's preexisting impairment is definitely ascertained by his prior PPD award, and the amount of that award is not disputed. The issue before the Court is the proper method for

9

apportioning Mr. Lester's preexisting impairment when determining the proper amount of his PPD award in this claim.

Neither the workers' compensation statutory framework nor the attendant regulations provide guidance on the proper method for this apportionment. However, in *Birch,* we addressed the method for apportioning a preexisting impairment in the context of a lumbar injury for which the resulting impairments are categorized by rule. *See, e.g.*, W. Va. C.S.R. § 85-20-VII App. C (providing PPD ranges for various lumbar spine criteria).[8] We concluded that the correct method in that case was to first categorize the lumbar impairment according to West Virginia Code of State Rules § 85-20-VII App. C,[9]

---

[8] We have explained that,

> West Virginia Code of State Rules § 85-20-[VII App. C] is a table of PPD ranges containing five categories of criteria for rating impairment due to lumbar spine injury. Lumbar Category I is 0% impairment of the whole person; Category II is 5% to 8%; Category III is 10% to 13%; Category IV is 20% to 23%; and Category V is 25% to 28%.

*SWVA, Inc. v. Birch*, 237 W. Va. 393, 394 n.2, 787 S.E.2d 664, 665 n.2 (2016).

[9] There appears to be a general practice of referring to any one of the numerous provisions included in West Virginia Code of State Rules Title 85, Series 20 as "Rule 20." Sometimes the intended reference is obvious, while other times it is not so clear. The best practice is to identify the specific section, range of sections, or appendix being referenced.

10

to determine the claimant's *final* whole person impairment, and then to deduct the preexisting lumbar impairment as a last step. Thus, we held:

> In fixing the amount of a permanent partial disability award for a compensable injury suffered by a workers' compensation claimant who has a noncompensable preexisting definitely ascertainable impairment, the correct methodology pursuant to W. Va. Code § 23-4-9b (2003) is to deduct the impairment attributed to the preexisting injury from the final whole person impairment rating as determined under West Virginia Code of State Rules § 85-20[-VII App. C].

Syl. pt. 3, *Birch*, 237 W. Va. 393, 787 S.E.2d 664.[10] However, *Birch* did not involve the Combined Values Chart, so it does not resolve the specific query raised in this case: When a claim involves multiple injuries affecting different parts of the body, are preexisting impairments deducted separately for each relevant body part prior to establishing a final cumulative impairment using the Combined Values Chart, as Dr. Guberman did? Or are preexisting impairments deducted as a final step, after the sum of all impairments has been obtained via the Combined Values Chart, the method suggested by Dr. Thaxton?

---

[10] *Birch* involved only lumbar spine injuries, so application of the Combined Values Chart was not an issue in that case. However, Dr. Guberman also evaluated Mr. Birch and used the Combined Values Chart to calculate the total for Mr. Birch's diagnosis-based lumbar impairment and his range of motion lumbar impairment. This was done before application of W. Va. C.S.R. § 85-20-VII App. C.

Notably, Dr. Guberman and Dr. Thaxton agree that Dr. Guberman's evaluation demonstrated that Mr. Lester has a 30% whole-person impairment.[11] No doctor has opined that Mr. Lester is 39% impaired. Yet, using Dr. Guberman's method of apportionment the BOR granted Mr. Lester PPD awards that total 39%—9% more than his combined whole person impairment. This result does not comply with the legislative mandate that "[c]ompensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment." W. Va. Code § 23-4-9b.[12]

Furthermore, as Logan-Mingo observes, applying Dr. Guberman's method in other situations could result in a claimant being awarded greater than 100% PPD for multiple injuries. Allowing such a result would require an absurd interpretation of W. Va.

_____

[11] During his deposition testimony, Dr. Guberman confirmed that the total of Mr. Lester's unapportioned impairments is 30%.

[12] Similarly, in *Birch*, the Court observed that the method Dr. Guberman used to apportion the claimant's preexisting condition in that case resulted in

> the same maximum award to which the [claimant] would have been entitled whether or not he had a preexisting condition. Such a result is at odds with the purpose and language of W. Va. Code § 23-4-9b, which is to disallow any consideration of any preexisting definitely ascertainable impairment in arriving at the percentage of disability occasioned by a subsequent injury.

*Birch*, 237 W. Va. at 398, 787 S.E.2d at 669.

Code § 23-4-9b, which we cannot condone. *Cf.* Syl. pt. 2 *Conseco Fin. Serv. Corp. v. Myers*, 211 W. Va. 631, 567 S.E.2d 641 (2002) ("'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925)."). *See also* AMA *Guides* 8 ("In this book, a 95% to 100% whole-person impairment is considered to represent almost total impairment, a state that is approaching death.").

Because Dr. Guberman's apportionment method granted Mr. Lester 9% more than his actual combined level of whole person impairment, this case demonstrates that to accurately apportion preexisting impairments, a claimant's final degree of permanent partial disability from injuries to multiple body parts should first be calculated using the Combined Values Chart. Then the amount of the claimant's preexisting impairment that has been definitely ascertained, totaled according to the Combined Values Chart as needed, is deducted to determine the amount of impairment attributable to the subsequent injury. Applying this method prevents a claimant from being granted cumulative PPD awards that are greater than his or her cumulative whole-person impairment and corresponds with the language and intent expressed in West Virginia Code § 23-4-9b and Syllabus point 2 of *Birch*, which disallow consideration of any preexisting definitely ascertainable impairment

13

when determining the amount of PPD caused by a subsequent compensable injury. The

American Medical Association also recommends this method in the sixth edition of its

*Guides to the Evaluation of Permanent Impairment*,[13] which explains:

> *Apportionment* is an allocation of causation among multiple factors that caused or significantly contributed to the injury or disease and resulting impairment. Apportionment requires a determination of percentage of impairment directly attributable to preexisting as compared with resulting conditions and directly contributing to the total impairment rating derived. In such cases the rating physician may estimate these contributions by first developing the following contingent ratings as based on earlier work:
>
> 1.    A "total" impairment rating (A) (an all-inclusive current rating) is derived irrespective of preexisting and resulting conditions.
>
> 2.    A second "baseline" rating (B) is derived that accounts solely for preexisting conditions without associated or aggravating reinjury.
>
> 3.    The final rating (C) is derived in which preexisting conditions are discounted by subtracting the second from the first rating (A – B).

Am. Med. Ass'n*, Guides to the Evaluation of Permanent Impairment*, 610 (Robert D.

Rondinelli, MD, PhD, et al. eds., 6th ed. 2008) (footnote omitted). Accordingly, we now

hold that when a claimant has preexisting, definitely ascertained impairments to multiple

---

[13] While use of the fourth edition of the AMA *Guides* to evaluate the degree of permanent whole-person impairment is required, *see* W. Va. C.S.R. § 85-20-65.1 (eff. 2006), we found no guidance on the proper method for apportioning a preexisting impairment in that edition. Consequently, we find guidance provided in the sixth edition of this publication persuasive to our resolution of this case.

body parts and then sustains new compensable injuries that affect the previously impaired body parts, the proper method for apportioning the preexisting impairments is to first determine the claimant's total, unapportioned whole-person impairment using the Combined Values Chart of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). Then, the total amount of the claimant's preexisting impairment that has been definitely ascertained must be deducted from the total, unapportioned whole-person impairment to calculate the amount of the claimant's Permanent Partial Disability award.[14]

Applying this holding, we find that the BOR erred by granting Mr. Lester a 19% PPD award that was based on Dr. Guberman's erroneous apportionment method. We reverse the BOR decision and remand this case with instructions to reinstate the OOJ decision affirming Mr. Lester's 10% PPD award.

---

[14] In ruling on this case, the BOR relied, in part, on the decision in *Miller v. Dynamic Energy, Inc., LWF*, No. 20-0552, 2021 WL 5150063 (W. Va. Nov. 5, 2021) (memorandum decision), which affirmed a BOR decision adopting Dr. Guberman's method without analyzing that method. To the extent that *Miller* can be viewed as endorsing a method of apportionment different from the one set out in this opinion, it has no binding effect.

15

**IV.**

**CONCLUSION**

For the reasons explained above, we reverse the BOR order dated March 23, 2022, and remand this case with instructions to reinstate the OOJ order dated October 1, 2021, affirming Mr. Lester's 10% PPD award.

Reversed and Remanded with Instructions.